COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton and Annunziata
Argued at Alexandria, Virginia


THOMAS J. SULLIVAN, JR.
                                          OPINION BY
v.    Record No. 0027-00-4        JUDGE JAMES W. BENTON, JR.
                                       NOVEMBER 21, 2000
MARY F. SULLIVAN


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Henry E. Hudson, Judge

          Theresa E. Cummins (William B. Reichhardt;
          Margaret B. Craig; William B. Reichhardt &
          Associates, on brief), for appellant.

          J. Thomas Fromme, II (Sherman & Fromme, P.C.,
          on brief), for appellee.


     This appeal arises from an order enforcing a property

settlement agreement, which was affirmed, ratified, and

incorporated into an order in a prior divorce proceeding.

Thomas J. Sullivan contends the trial judge committed five

reversible errors in a contempt proceeding initiated by his

former wife, Mary F. Sullivan.  For the reasons that follow, we

affirm the decision.

                              I.

     Thomas J. Sullivan and Mary F. Sullivan were divorced by a

decree dated April 26, 1976, that reserved for future

consideration issues of "alimony, support, maintenance,

arrearage, court costs and counsel fees."  On July 9, 1976, a

judge approved, ratified, and incorporated into a court order the parties' property settlement agreement. Under the heading "Custody, Alimony, Support and Maintenance," the agreement contained the following provisions relevant to this appeal:

> b. The Husband shall make the following periodic payments to the Wife for the maintenance and support of the Wife and for the maintenance and support of the two minor children of the parties:
>
> The sum of [$1,300] per month, commencing on the 9th day of July, 1976, and continuing on the 5th day of each and every month thereafter. As each child dies, marries, attains the age of eighteen (18) years or otherwise becomes emancipated, whichever event first occurs, the foregoing sum shall be reduced by [$300] per month. In the event of the Wife's remarriage, death or the Husband's death, said sum shall be reduced in the amount of [$700] per month.
>
> *    *    *    *    *    *    *
>
> e. The Husband shall maintain at least [$30,000] worth of unencumbered life insurance insuring his life, naming the Wife and the children as beneficiaries thereunder.

In April 1999, the wife filed a motion for rule to show cause against the husband because he had failed to furnish proof of life insurance coverage. The husband responded, in part, that the intent of the agreement was to provide financial support for the minor children, that the children were then thirty-four and thirty-five years old, respectively, and that he could not now purchase life insurance because of his age. Neither party testified at trial. Other evidence proved the

husband had a life insurance policy until six years after his retirement.  In 1992, he waived further coverage, terminating the policy.

In pertinent part, the trial judge found as follows:

> Paragraph 12(b) of the . . . Property Settlement Agreement contemplates the continuation of spousal support after the [husband's] death.  The Property Settlement Agreement provides for life insurance under the section entitled Custody, Alimony, Support and Maintenance.  The obvious intent of the parties in including the policy in the Property Settlement Agreement was to enable the [wife] to maintain herself after the death of her former husband.

> Therefore, even under the 1976 language of Section 20-109.1, the Court can enforce paragraph 12(e) of the Property Settlement Agreement requiring the [husband] to maintain the life insurance policy. . . . [H]ere, the parties specifically contemplated extending the [husband's] support obligation past his death, and incorporated that contemplation in a valid final decree of divorce.  The court may now enforce that obligation in a contempt proceeding, as the court may enforce any other valid provision of a Final Decree of Divorce.

The judge ordered the husband, at his option, either to purchase a life insurance policy consistent with the agreement or post a bond in the amount of $30,000 to ensure performance of the obligation.  The judge also awarded attorney fees to the wife.

## II.

The husband contends the trial judge lacked authority to enforce the life insurance provision because that provision

conflicted with the law in force in 1976.  The agreement

specifically provided that "the law of Virginia as it presently

exists" would govern.  He argues that the life insurance

provision does not concern the maintenance of the wife or the

minor children and that, therefore, the trial judge lacked

jurisdiction to incorporate it in 1976 or to enforce it in this

proceeding.

In 1976, Code § 20-109.1 provided as follows:

> Any court may affirm, ratify and incorporate
> in its decree dissolving a marriage or
> decree of divorce . . . any valid agreement
> between the parties, or provisions thereof,
> concerning the conditions of the maintenance
> of the parties, or either of them and the
> care, custody and maintenance of their minor
> children.  Where the court affirms, ratifies
> and incorporates in its decree such
> agreement or provision thereof, it shall be
> deemed for all purposes to be a term of the
> decree, and enforceable in the same manner
> as any provision of such decree.

The husband directs us to no cases in Virginia or elsewhere

that define the term "maintenance."  Rather, he cites the

language in the current statute, allowing trial judges to

incorporate by reference into a decree an agreement containing

any "condition or consideration, monetary or nonmonetary," Code

§ 20-109.1, as proof that the legislature intended to enlarge

the scope of the statute to include conditions such as

maintaining life insurance.  He asserts that, by implication,

the scope of the statute in 1976 was not so broad.

We find unpersuasive the husband's reasoning.  The term "maintenance" as used in the statute is much broader than the provision of food, clothing, and shelter; it includes a broad range of benefits and other conveniences.  To rule otherwise is to give "an unduly narrow construction of Code § 20-109.1." Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 866 (1975). Indeed, in Morris, the Supreme Court ruled that a husband's obligation in a property settlement "agree[ment] to maintain a $10,000 life insurance policy on his life for the benefit of each child" was a provision "reasonably relate[d] to the care and maintenance of the children."  Id. at 459-60, 219 S.E.2d at 867.

Moreover, as the wife aptly notes, the life insurance provision is contained in a section of the agreement entitled, "Custody, Alimony, Support and Maintenance."  It required the husband to name as beneficiaries the wife and the children.  The life insurance policy was one of several benefits which the husband specifically agreed in this section to provide them. The parties agreed upon the insurance provision without any time limitation, requiring only that the proceeds of the insurance policy were to be paid upon the death of the husband.  The husband's agreement to maintain this life insurance policy was not inconsistent with the policy and requirements of the statute as it existed in 1976.  It was an obligation "reasonably relate[d]" to the maintenance of the wife and the children and

not unlike "similar provisions [that] have been held to be incorporated without question into decrees in other divorce proceedings."  Id. at 460, 219 S.E.2d at 867.

The trial judge noted that provision 12(b) of the agreement "contemplates the continuation of spousal support after the [husband's] death."  To decide this case, we need not address the parties' intent in providing in section 12(b) of the agreement that "[i]n the event of . . . the Husband's death" the unitary support "shall be reduced in the amount of [$700] per month."  Regardless of the parties' intent in this provision, the husband expressly and unconditionally agreed to maintain the life insurance policy for the benefit of the wife and his children.  The proceeds were to be paid on his death.  Thus, we hold that the insurance provision fulfills the "conditions of the maintenance" standard of Code § 20-109.1 and is a valid, enforceable part of the agreement.

### III.

The husband also argues that Code § 20-107 as it existed in 1976 precluded the trial judge's finding because it forbade courts from decreeing the payment of support and maintenance after the death of the payor.  In pertinent part, this statute provided that "the court shall have no authority to decree support of children or support and maintenance of the spouse to continue after the death of the person ordered to pay such support and maintenance."  Id.

The trial judge's order did not require the husband to pay spousal support after his death. The trial judge merely ordered the husband to honor his obligation to maintain the life insurance policy during his life. In this regard, this case is similar to Paul v. Paul, 214 Va. 651, 203 S.E.2d 123 (1974), where the trial judge "approved, ratified, and confirmed [in the final divorce decree] the [parties' property settlement] agreement and ordered the parties to fully comply with its terms and conditions." Id. at 652, 203 S.E.2d at 124. The Supreme Court recognized the validity and enforceability of the agreement, which, among its provisions, "require[d] the husband to pay for and maintain certain life insurance policies on his life until the youngest child becomes 23 and to name a trust for the benefit of the children as beneficiary of these policies." Id. at 653-54, 203 S.E.2d at 125.

A payment from an insurance company, a third party, upon the death of the husband is not a support payment from the estate of the husband. Furthermore, as earlier noted, this was a valid court-approved agreement between the parties that was consistent with the public policy favoring voluntary resolution of disputes concerning maintenance and support. See Morris, 216 Va. at 459, 219 S.E.2d at 867. See also Cutshaw v. Cutshaw, 220 Va. 638, 641, 261 S.E.2d 52, 54 (1979) (holding that the jurisdiction of the divorce court with regard to support and

maintenance is statutorily determined "unless otherwise provided by agreement incorporated into the divorce decree").

Accordingly, we hold that the trial judge properly required the husband to comply with the terms of the agreement. Nothing in Code § 20-107 as it existed in 1976 precluded the incorporation of the agreement or the enforcement of its provisions.

IV.

The husband next contends that the wife's motion to show cause must fail because it referenced only the April 26, 1976 decree of divorce, which preceded the signing of the agreement on July 8, 1976. We find no merit in this argument. The divorce decree reserved for future determination the issues of support and maintenance. Those issues were settled by the parties' agreement, which was "approved, ratified, affirmed and incorporated" as the court's decree by order dated July 9, 1976. See Rogers v. Damron, 23 Va. App. 708, 713, 479 S.E.2d 540, 542 (1997) (holding that the trial judge had the "power to incorporate a settlement agreement in a decree following the entry of a decree of divorce").

Although the husband did not raise this issue in his initial response to the wife's motion, he did mention it in a memorandum requesting that the trial judge dismiss the motion. At trial, both parties proceeded on the basis that the judge was enforcing the July 9, 1976 order, which incorporated the

property settlement agreement. Moreover, the trial judge explicitly mentioned both the July 8, 1976 agreement and the July 9, 1976 order in his final order of December 2, 1999. These circumstances establish that the parties and the trial judge clearly were aware throughout the proceedings that the July 9, 1976 order was the one at issue. Accordingly, we hold that the trial judge did not err in refusing to dismiss the show cause motion.

V.

The husband contends the trial judge should not have adjudicated this case without joining the adult children as necessary parties. He argues that the wife did not allege she was acting in the interests of the children and that no argument was heard concerning the allotment of the $30,000 between the wife and the children.

Code § 8.01-5 provides that no suit shall abate or be defeated by nonjoinder of parties and that the trial judge by order may add parties to promote the ends of justice. The husband makes no convincing argument that the children were necessary to this suit. The life insurance provision stated that the wife and the children should be named the beneficiaries of the policy. The wife was the signatory to the agreement that she was seeking to enforce. Clearly, as a direct beneficiary of the agreement and a party to the agreement, the wife had the power to enforce the provisions of the agreement.

Furthermore, although the children are listed in the agreement as beneficiaries of the life insurance, no reason exists why the trial judge could not adjudicate this matter without the children. The husband raises the possibility that the children will contest the amount of money they should receive under the insurance policy. The final order in this case, however, merely requires the husband to comply with the agreement which he signed or post a bond to ensure his compliance with that agreement. It does not require the husband or the judge to apportion money between the children and the wife. Accordingly, we hold that the trial judge did not err in denying the husband's request to join the children as parties.

VI.

The husband further contends the trial judge should not have ordered him to pay attorney's fees. The husband argues that the judge took the arguments under advisement several times and stated that the husband had raised a number of close issues. Furthermore, the judge acknowledged that, because of the husband's advanced age, it would be almost impossible for him to acquire life insurance. The husband also argues the trial judge did not specifically find him in contempt of court. He, therefore, contends the award of attorney's fees was erroneous.

Judges presiding over contempt proceedings in divorce suits have the discretion to award counsel fees. Carswell v. Masterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982). The

trial judge's failure to use the word "contempt" in his order does not alter the effect of his ruling.  As in <u>Carswell</u>, the wife had to resort to legal proceedings to secure compliance with a valid court order.  In awarding legal fees, the trial judge found that the husband failed to perform a legal duty.  Furthermore, simply because the trial judge ordered the husband to comply with the life insurance provision, the alleged impossibility of securing such a policy does not provide a basis for establishing an abuse of discretion by the trial judge in awarding attorney's fees.  The husband's reliance on <u>Wilson v. Collins</u>, 27 Va. App. 411, 499 S.E.2d 560 (1998), does not aid his argument because in that case we held that the trial judge had incorrectly found a party in contempt and therefore could not order that party to pay attorney's fees.

Here, the trial judge's final ruling on the wife's motion was appropriate.  No evidence proves the judge abused his discretion in awarding fees.  Accordingly, we hold that the trial judge did not err.

For these reasons, we affirm the trial judge's order.

<u>Affirmed.</u>