COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Frank and Clements
Argued at Alexandria, Virginia


NOEL J. ALBERT

v.   Record Nos. 1439-01-4 and                    OPINION BY
                1987-01-4                     JUDGE ROBERT P. FRANK
                                                 MAY 21, 2002
CYNTHIA G. ALBERT


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      R. Terrence Ney, Judge

          Ted Kavrukov (Kavrukov & DiJoseph, on
          briefs), for appellant.

          No brief or argument for appellee.


     In this consolidated appeal, Noel J. Albert (father) appeals

the trial court's denial of his Motion to Modify Visitation and

Child Support.  He contends the trial court erred in (1) not

modifying visitation to reduce childcare costs, (2) failing to

impute income to Cynthia G. Albert (mother), and (3) awarding

attorney's fees to mother.  Father also appeals the trial court's

finding that he was responsible for payment of certain medical

expenses of the minor children.  For the reasons stated, we

affirm.

                      I.  BACKGROUND

              A.  Visitation and Child Support

     The parties were divorced in June 2000.  Custody of the

parties' three children was given to mother, and a schedule of

visitation with father was established.  On January 18, 2001, father filed a Motion to Modify Visitation and Child Support.

The motion stated mother works "32 hours a week, 24 hours on weekends and 8 hours on Tuesdays from 3:00 p.m. to 11:00 p.m." Also, mother "pays for child care while she works on Tuesdays." Father proposed he care for the children on Tuesdays, from the end of the school day until the next morning, when he would take the children to school.  In the alternative, father suggested the parties' thirteen-year-old daughter provide childcare for the other two children on Tuesdays.  Father indicated in his motion that either alternative would "significantly diminish child care costs" and, therefore, reduce child support.

A hearing on the motion was set for March 22, 2001.  No one testified at the hearing, despite the motion's evidentiary nature. The hearing consisted of a dialogue between the judge and counsel. Neither party objected to this procedure; therefore, we accept the dialogue as "proffered testimony."  However, we can glean only minimal information from this dialogue.[1]

At the beginning of the hearing, counsel for mother indicated she could stop working on Tuesday, thereby saving childcare expenses for that day.  Counsel opined this change would eliminate

---

[1] We realize many trial issues are resolved with proffered evidence, but counsel and the trial court must ensure the proffers contain all of the information necessary to resolve the issue at trial and to provide a sufficient record for appellate review.

-

any interruption in the children's schedules.  The children "wouldn't have to . . . go to dad's, get up early on Wednesday morning and be driven to school."

Father's attorney responded that, if mother did not work on Tuesdays, her salary would be diminished considerably, and the court then must impute that lost income to her.  Father's counsel represented that mother's total annual salary was $74,823.32, or $6,235.28 per month.  Mother's attorney explained, however, because of a new union contract with increased wages, mother could maintain her old salary without working on Tuesdays.

Father's counsel stated that if mother continued to work on Tuesdays, and the children spent Tuesday nights with father, the reduction in childcare costs would be $616 per month.  No other evidence, by proffer or otherwise, was elicited as to income or the expenses of the parties.

The trial court ruled the children would not spend Tuesday evenings with father.  The court further ordered, since mother would no longer work on Tuesdays, that both counsel recalculate the amount of child support based on the reduction in her income and the reduction in childcare expenses.  The court denied the request for imputation of income, without stating a reason.  It also awarded attorney's fees in the amount of $780 to mother.  During the ensuing recess, the parties compromised on an amount of

child support of $533 per month.  The parties did not file any worksheets with the court.[2]

The trial court entered an order on May 10, 2001, denying the motion to modify visitation, awarding $533 per month in child support,[3] and awarding mother $780 in attorney's fees.

### B.  Medical Expenses

Mother filed a Petition for Rule to Show Cause against father on April 11, 2001, claiming he had willfully failed to pay his share of the children's medical expenses as provided in the final decree of divorce.  She claimed he owed $960.92 for these bills.

The final divorce decree of the parties provided,

> In the event that the children have extraordinary uninsured medical expenses, including but not limited to deductibles, medicines, therapy, counseling, physical therapy, dental and/or orthodontic expenses, [father] shall be responsible and pay 50% of these expenses.  Payment for said expenses shall be made at the time [mother] provides [father] with evidence of the expense, or at such time as a doctor or other medical professional requires payment.

---

[2] While the appendix contains worksheets, they were not offered into evidence at the hearing nor were they made part of the proffer.  These documents, therefore, are not part of the record and will not be considered by this Court.  Rule 5A:10, Rule 5A:25.  See also John v. Im, 263 Va. 315, 320, 559 S.E.2d 694, 697 (2002) (noting the appellate court is limited to the record before it and cannot consider documents that were not submitted to the trial court).

[3] The order states the support award is based upon "the agreement of the parties as to the amount of child support based upon the guidelines set forth by the court."

-

The final decree further ordered father to "provide health care insurance coverage for the children."

A consent order entered on July 23, 1999 set forth custody, visitation, and the related issues of health, education, and "general upbringing."  It required each party "notify the other at the time a doctor, dental or medical appointment is made for the benefit of the children."[4]

The June 29, 2001 show cause hearing also consisted generally of a dialogue between counsel and the court.  Mother testified

---

[4] The entire paragraph B, "Health," states:

> 1.  The parties agree to consult with each other on major health decisions, and each parent shall have access to professional consultation and records.
>
> 2.  If any of the children should become sick, the parent with whom the child is not staying at the time may visit the sick child.  Each parent is to notify the other if any child is sick enough to be taken to the doctor or is confined to bed for two days or more.
>
> 3.  In the event that either parent should need to authorize emergency hospitalization, medical care or both for either child, that parent in whose care or presence the child is at the time shall have full authority to do so as a custodial parent.
>
> 4.  The parties shall notify the other at the time a doctor, dental or medical appointment is made for the benefit of the children.

briefly, but not under oath.[5]  Mother apparently submitted five

cancelled checks and three credit card receipts, showing payments

totaling $1,512.84 for various doctors' appointments.

Additionally, mother apparently presented to father at the

hearing, for the first time, another medical bill for $204.50,

raising the total medical bills to $1,717.34.[6]

Father's counsel argued his client should not be responsible

for fifty percent of these bills.  He contended mother did not

have "clean hands" for several reasons.  First, contrary to the

terms of the consent order, she did not notify father of the

children's appointments that gave rise to these medical bills.

Also, father never received copies of the bills so that he could

submit them to his primary or secondary insurance carrier.  Father

further contended that several medical bills were from visits to

medical providers outside of his insurance plan.

At the hearing, father confirmed that his counsel's

representations to the court were "the truth."  Father did not

testify.  Both the judge and mother's counsel accepted the

representations of fact presented in father's counsel's argument.

Although not under oath, mother addressed the trial court and

admitted that she took the children to two health providers,

Dr. Sharif and Hour Eyes, who were not on father's insurance plan.

---

[5] Again, father did not object to this procedure.

[6] Father never questioned or objected to the amount of the
medical bills.  He objected only to paying some or all of them.

-

She indicated Dr. Sharif initially was on the plan and only after the services were rendered did she learn that Sharif had dropped the plan. She then began taking the children to another doctor. Mother explained Hour Eyes told her that they "carry her insurance," but, apparently, they did not.

The trial court found father was not in contempt of the consent order. The court admonished mother to notify father whenever the children went to a doctor, "in order to give him the opportunity to make sure it's covered by the insurance," and to transmit medical bills in a timely fashion, since "it's better to provide it [to father] sooner as opposed to later." The trial court did order that father pay $960.92 of the unreimbursed medical expenses, attorney's fees of $600, and costs of $69.50.

## II. ANALYSIS

### A. Visitation and Child Support

Father first contends the trial court erred in not modifying its earlier order to allow him visitation on Tuesdays. We disagree.

When determining whether to change visitation, a trial court "must apply a two-pronged test: (1) whether there has been a change in circumstances since the most recent [visitation] award; and (2) whether a change in [visitation] would be in the best interests of the child." Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986) (discussing this test in the context of custody determinations). "In matters of custody, visitation, and

-

related child care issues, the court's paramount concern is always the best interests of the child."  Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).  "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  Id. at 328, 387 S.E.2d at 795.  "A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion, . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it."  Id. (citation omitted).

Here, father did not meet his burden.  He did not show any change of circumstance had occurred since the last order nor did he show a change in visitation would be in the children's best interests.  Instead, his motion and argument only demonstrated that a change would be in his best interest.[7]  His rationale for the Tuesday visitation was to reduce his child support payments by saving childcare costs.  The trial court did not abuse its discretion in denying the motion to change visitation.

Father next contends, since mother voluntarily reduced her workweek from thirty-two to twenty-four hours by not working

_____

[7] While appellant, at oral argument, contended he argued during the hearing that a change in visitation would be in the children's best interest, we find nothing in the record to support that position.

-

Tuesdays, income should be imputed to her. We again must look to the "proffered testimony" to determine if father met his burden.[8]

The dialogue indicated mother was "willing" to "stop working on Tuesdays." The record does not reflect whether she did in fact stop working. We, therefore, do not know if she voluntarily reduced her income. In fact, at the time of the hearing, all indications were mother was still working on Tuesdays; her work hours had not changed prior to the hearing.

Imputation of income is used by a trial court when deciding whether "to deviate from the presumptive amount of child support, and 'any child support award must be based on circumstances existing at the time the award is made.'" Saleem v. Saleem, 26 Va. App. 384, 393, 494 S.E.2d 883, 887-88 (1998) (quoting Sargent v. Sargent, 20 Va. App. 694, 703, 460 S.E.2d 596, 600 (1995)).

This Court set forth the parameters for imputing income in Niemiec v. Dep't of Soc. Serv., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998):

> When asked to impute income to a parent, the
> trial court must consider the parent's
> earning capacity, financial resources,
> education and training, ability to secure
> such education and training, and other
> factors relevant to the equities of the
> parents and children. See Brooks [v.

---

[8] While father objected to the May 10, 2001 order on a number of bases, including the court's refusal to hear testimony on the visitation matter, he did not make an objection based on the court's refusal to hear testimony on imputed income.

-

> Rogers], 18 Va. App. [585, 592, 445 S.E.2d
> 725, 729 (1994)] (citing Code
> § 20-108.1(B)).  The burden is on the party
> seeking the imputation to prove that the
> other parent was voluntarily foregoing more
> gainful employment, either by producing
> evidence of a higher-paying former job or by
> showing that more lucrative work was
> currently available.  See Brody [v. Brody],
> 16 Va. App. [647, 651, 432 S.E.2d 20, 22
> (1993)]; Hur v. Virginia Dept. of Social
> Services Div. of Child Support Enforcement
> ex rel. Klopp, 13 Va. App. 54, 61, 409
> S.E.2d 454, 459 (1991); see also Antonelli
> v. Antonelli, 242 Va. 152, 154, 409 S.E.2d
> 117, 119 (1991).  The evidence must be
> sufficient to "enable the trial judge
> reasonably to project what amount could be
> anticipated."  Hur, 13 Va. App. at 61, 409
> S.E.2d at 459.

The trial court's decision here, refusing to impute income to mother, will be upheld on appeal unless "'plainly wrong or unsupported by the evidence.'"  Sargent, 20 Va. App. at 703, 460 S.E.2d at 600 (quoting Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994)).

In the dialogue, father's counsel indicated that mother's annual salary was $74,823.32, or $6,235.28 a month, and that prior to the hearing, mother worked thirty-two hours per week. If she did not work on Tuesdays, her workweek would be twenty-four hours.  Mother's counsel responded that her income would not be "diminished" due to a better union contract, "because she works weekends, and because she works late nights, she gets a better deal.  Essentially, she works fewer hours and receives money."  Mother's counsel further represented that she

-

would be able to earn the salary "she had before, without working Tuesdays." This proffer was not opposed by father.

The trial court instructed both counsel to prepare an order for change of child support payments, "based upon the change of the salary and day care elements." After a recess, counsel returned with a figure of $533 per month, but they did not submit any worksheets or explanation of the elements included in the calculation of that number.[9] We do not know if the $533 figure reflected a change in income or in day care, nor do we know the amount of change attributable to each. The informality of the procedure leaves a woefully poor record. While father's counsel continued to argue that income should be imputed to mother, and the trial court indicated it would reconsider the issue, the final order used the $533 figure.

From the above, it is not clear that wife has actually suffered a loss of income. We, therefore, affirm the trial court's decision not to impute income to mother. Father had the burden to prove imputation was appropriate, see Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579, and he failed to do so.

Finally, father contends the trial court erred in assessing attorney's fees against him as his motion was meritorious. He argues the court failed to consider his ability to pay versus

---

[9] The record does indicate this figure was reached after some negotiation between the parties.

-

mother's ability to pay.  He also argues the fees were unreasonable.

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion."  Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987).  The "key to a proper award of counsel fees" is "reasonableness under all of the circumstances."  McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).  To promote this determination, "evidence in the record [must] explain or justify the amount of the award."  Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988).  "Where the trial judge finds that a fee award is justified, evidence of time expended and services rendered is a proper basis upon which to fix an award."  Id.

Although no affidavit was presented to the trial court, mother's counsel represented to the court without objection that her hourly fee was $200.  She then set forth the time expended for two court appearances, telephone calls, drafting documents, etc., for a bill totaling $780.  Further, the trial court found father's motion for modification was not meritorious.  Under these circumstances, we hold that the award of counsel fees was reasonable.

### B.  Medical Expenses

Father contends he should not have to reimburse mother for the children's medical bills because she did not notify him of

-

their appointments.  Essentially, he maintains notification is a condition of reimbursement.  The trial court disagreed, stating, "I do not find . . . the language of the order or the agreement to result in a default on the right of . . . reimbursement for the expenses incurred for these medical and dental visits."  We agree with the trial court.

"It is the firmly established law of this Commonwealth that a trial court speaks only through its written orders."  Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996).  Additionally, "trial courts have the authority to interpret their own orders."  Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc., 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000).  See also Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129, 510 S.E.2d 255, 260 (1999) (en banc).  "Furthermore, when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court."  Id.

In this case, no notification language is contained in the final decree's provisions for health care coverage and reimbursement.  Instead, notification language is found in the consent decree, under the title, "Health."  This "Health" provision requires the parties consult one another as to "major health decisions" and requires notification of illnesses and medical appointments.  Similarly, under the provisions entitled, "Education," the parties are required to share information

-

concerning the children's education, grades, and activities.  In the context of the consent decree, the trial court ordered the parties to cooperate and share information concerning the children's welfare and best interests.

Based on this record, we cannot say the trial court abused its discretion in its interpretation of its own decree.  We, therefore, hold the notification requirement was not a condition precedent for father's obligation to reimburse mother for the medical expenses.

Father also argues he should be released from any obligation to pay some of these medical bills because the appointments were not with doctors listed by his insurance provider.  However, the trial court accepted mother's explanation of why she took the children to these particular health care providers, and we will not disturb that finding.

"'[T]he finding of the judge, upon the credibility of the witnesses and the weight to be given their evidence, stands on the same footing as the verdict of a jury, and unless that finding is plainly wrong, or without evidence to support it, it cannot be disturbed.'"  Yates v. Commonwealth, 4 Va. App. 140, 143, 355 S.E.2d 14, 16 (1987) (quoting Lane v. Commonwealth, 184 Va. 603, 611, 35 S.E.2d 749, 753 (1945)).  We cannot say the

-

trial court was "plainly wrong" in accepting mother's explanations.[10]

Father also argues mother should not be reimbursed because she did not "timely" send the medical bills to him. However, he does not argue that he suffered any prejudice from the untimely receipt of the bills. Nothing before the trial court indicated father's insurance carrier would decline to pay the bills of providers covered by the plan if the bills were not submitted in a "timely" fashion.

Father also asks that we apply the doctrine of "unclean hands" to this case. He argues mother's actions were improper and, therefore, she should not benefit from her "wrongful" behavior. Assuming, without deciding, that the unclean hands doctrine applies to these circumstances, we do not conclude that mother lacked "clean hands."

"[H]e who asks equity must do equity, and he who comes into equity must come with clean hands." Walker v. Henderson, 151 Va. 913, 927-28, 145 S.E. 311, 315 (1928).

> The withholding of equitable relief to
> punish a wrongdoer has been approved in
> other cases involving issues of family law

---

[10] While we do not condone a trial court accepting testimony from unsworn witnesses, father did not object to this procedure. As the appellant in this case, he had the responsibility to protect the parts of the record that would support his arguments on appeal. See Davis v. Commonwealth, 35 Va. App. 533, 537, 546 S.E.2d 252, 254 (2001) ("[Appellant] has the burden to preserve an adequate record on appeal to allow us to consider the propriety of the trial court's actions.").

-

> but not where the rights of children were
> prejudiced by the result.  <u>See</u> <u>Davis v.</u>
> <u>Davis</u>, 206 Va. 381, 387, 143 S.E.2d 835, 839
> (1965); <u>Gloth v. Gloth</u>, 154 Va. 511, 555,
> 153 S.E. 879, 893 (1930).

<u>Brown v. Kittle</u>, 225 Va. 451, 457, 303 S.E.2d 864, 867 (1983).

The trial court accepted mother's explanation for her behavior.  We will not disturb this factual finding.  <u>See</u> <u>Yates</u>, 4 Va. App. at 143, 355 S.E.2d at 16.  Because the court found mother was not a "wrongdoer," implicitly, she has "clean hands."

Father also argues he should not be responsible for three of the bills, totaling $50, since they are not "extraordinary" bills under Code § 20-108.2(D),[11] the child support guidelines statute.  The trial court rejected this argument, interpreting its own order as including such expenses.  The court opined that the word "extraordinary" in the order referred to "charges that are not insured, and I think they're properly recoverable."

Again, we defer to the trial court's interpretation of its own order.  <u>See</u> <u>Fredericksburg Constr. Co.</u>, 260 Va. at 144, 530

---

[11] Code § 20-108.2(D) states:

> Any extraordinary medical and dental
> expenses for treatment of the child or
> children shall be added to the basic child
> support obligation.  For purposes of this
> section, extraordinary medical and dental
> expenses are uninsured expenses in excess of
> $100 for a single illness or condition and
> shall include but not be limited to
> eyeglasses, prescription medication,
> prostheses, and mental health services
> whether provided by a social worker,
> psychologist, psychiatrist, or counselor.

-

S.E.2d at 152. We cannot say the trial court abused its discretion in that interpretation.

Lastly, we address father's contention that the trial court erred in awarding counsel fees and costs to mother. Father argues the trial court had no authority to award fees and costs. Essentially, father maintains that counsel fees can only be awarded pendente lite in divorce actions, see Code § 20-103(A), in a decree in which a divorce is "instituted or pending," see Code § 20-79(B), or when a party is found in contempt, see Wilson v. Collins, 27 Va. App. 411, 426, 499 S.E.2d 560, 567 (1998). Father maintains that here, given the divorce is concluded, he must be found in contempt before the court can assess attorney's fees against him. We disagree.

Father cites Carswell v. Masterson, 224 Va. 329, 295 S.E.2d 899 (1982), as limiting awards of attorney's fees to cases where contempt is found. However, Carswell involved a failure of the trial court to award fees after finding a party in contempt. Id. at 330, 295 S.E.2d at 900. The Supreme Court explained that trial courts may award attorney's fees in contempt proceedings brought to enforce support and divorce decrees and remanded the case "for such further proceedings as may be indicated." Id. at 332, 295 S.E.2d at 901. The Court did not express an opinion as to awards in other contexts.

The more relevant case is Sullivan v. Sullivan, 33 Va. App. 743, 536 S.E.2d 925 (2000). In Sullivan, husband agreed in a

-

property settlement to maintain life insurance, naming wife and children as beneficiaries; the settlement agreement was incorporated into a court order. Id. at 746, 536 S.E.2d at 927. Wife filed a show cause because husband failed to maintain the policy. Id. The trial court ordered husband to either purchase the required life insurance policy or post a bond to insure performance of the obligation; the court also awarded attorney's fees to wife, without finding husband in contempt of court. Id. at 747, 536 S.E.2d at 927. On appeal, husband contended, since he was not specifically found in contempt, the trial court erred in awarding attorney's fees. Id. at 752-53, 536 S.E.2d at 930. This Court upheld the award. Id. at 753, 536 S.E.2d at 930.

As explained in Sullivan:

> Judges presiding over contempt proceedings in divorce suits have the discretion to award counsel fees. Carswell v. Masterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982). The trial judge's failure to use the word "contempt" in his order does not alter the effect of his ruling. As in Carswell, the wife had to resort to legal proceedings to secure compliance with a valid court order. In awarding legal fees, the trial judge found that the husband failed to perform a legal duty. Furthermore, simply because the trial judge ordered the husband to comply with the life insurance provision, the alleged impossibility of securing such a policy does not provide a basis for establishing an abuse of discretion by the trial judge in awarding attorney's fees. The husband's reliance on Wilson v. Collins, 27 Va. App. 411, 499 S.E.2d 560 (1998), does not aid his argument because in that case we held that the trial judge had incorrectly found a

-

> party in contempt and therefore could not order that party to pay attorney's fees.

<u>Id.</u>

The case before us is very similar to <u>Sullivan</u>. Mother, for example, "had to resort to legal proceedings to secure compliance with a valid court order," i.e., the order for father to pay fifty percent of the children's medical expenses. <u>Id.</u> Here also, the trial court found father failed to "perform a legal duty." <u>Id.</u>

We further note that mother's counsel submitted an affidavit to the trial court, showing her time expended on this case. We, therefore, conclude the trial court did not abuse its discretion in awarding attorney's fees.

### III. CONCLUSION

For the reasons stated above, we affirm the trial court's rulings in these appeals.

<u>Affirmed.</u>