COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Humphreys and Kelsey
Argued at Richmond, Virginia


HARRY E. MILNER, JR.

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1484-02-1          JUDGE D. ARTHUR KELSEY
                                         MAY 6, 2003
SHERIL L. MILNER


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Robert B. Cromwell, Jr., Judge

               Albert L. Fary, Jr. (Albert L. Fary, Jr.,
               P.C., on briefs), for appellant.

               Paul D. Merullo (Shuttleworth, Ruloff,
               Giordano & Swain, P.C., on brief), for
               appellee.


     Harry E. Milner, Jr. contends that the trial court erred

when it incorporated the parties' separation agreement into the

final divorce decree and enforced a contractual support

obligation imposed by that agreement.  Finding no error in the

trial court's decision, we affirm.

                                I.

     When reviewing a chancellor's decision on appeal, we view

the evidence in the light most favorable to the prevailing

party, granting it the benefit of any reasonable inferences.

---

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

<u>Wright v. Wright</u>, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002); <u>Donnell v. Donnell</u>, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995).

Harry and Sheril Milner married in 1984. In 2000, the couple decided to divorce and retained the services of a mediator. On June 1, 2000, while in mediation, both parties signed a separation agreement. Section I of the agreement provided, in relevant part, that "Sherrie and Harry waive their claims to spousal support." Section IV, entitled "Child Support Agreement," declared that "Harry agrees to pay child support to Sherrie" for the Milners' only son. This same provision continued:

> The "Shared Custody Virginia Child Support Guidelines" have been calculated to have Harry providing $294.65 monthly to Sherrie, however, in the best interest of their child, Harry and Sherrie have agreed to deviate from the Guidelines, with Harry offering to provide, and Sherrie agreeing to accept, Three Hundred dollars ($300.00) for child support, <u>plus Seven Hundred dollars ($700) every month commencing June 1, 2000, and continuing every month thereafter until June 1, 2003 or said amount is modified by the parties or a court of competent jurisdictions</u>.

(Emphasis added).

After paying for two months the full amount agreed under Section IV, Mr. Milner decided he would no longer make the additional $700-per-month payment. He sent an e-mail to his wife stating, "I cannot continue to give you $700 every month

-

for your rent.  The best that I can do is $350.  This amount plus child support, and my share of our combined debt, it is still very reasonable."  Mrs. Milner, responding by phone, asked Mr. Milner to sign the agreement "null and void" because, as she put it:  "I said, because he is obviously not going to stick to the agreement, that I wanted to meet with him and have him sign the agreement stating that."  Mr. Milner refused.  Without the benefit of counsel, Mrs. Milner assumed the agreement was "null and void" simply because, as she explained it, Mr. Milner stopped "paying me the money he was supposed to pay me."

About a month later, Mrs. Milner then retained counsel and filed a bill of complaint for divorce requesting "support and maintenance for herself and support for the minor child."  She also filed a motion for <u>pendente</u> <u>lite</u> relief requesting child support and custody.  Mr. Milner answered and filed a cross-bill alleging that "the parties mutually agreed to separate on February 9, 2000."

At a <u>pendente</u> <u>lite</u> hearing in November 2000, the parties submitted an agreed decree setting Mr. Milner's child support obligation at $362 a month pursuant to statutory guidelines. The decree further indicated:  "No support arrearages exist as of the date of this Order."  The form order included a paragraph entitled "spousal support" in which the parties inserted "n/a" in the open space for the dollar figure.  The <u>pendente</u> <u>lite</u>

-

decree did not mention the $700 monthly payment obligation imposed by the separation agreement.

At the commissioner's hearing in April 2001, Mr. Milner submitted the separation agreement as an exhibit. He conceded that at no time did the parties ever "in writing, revoke that agreement." Mr. Milner testified that he stopped making the $700 monthly payment, not because of any rescission of the agreement, but because he "couldn't financially do it." Though he attempted to renegotiate "something workable," Mrs. Milner refused to release him from the obligation. He treated the $700-per-month obligation as "null and void" because he "was under the impression that once the papers were filed, that it starts over. I don't know. I'm not an expert."

Mr. Milner also conceded that, under the terms of the agreement, he was obligated to pay child support and "an additional payment of 700 [sic] every month, commencing June 1st of 2000." In consideration, Mrs. Milner explained, she waived any further right to seek spousal support. Throughout his testimony, Mr. Milner acknowledged the distinction between the $300-per-month child support payment and the additional $700-per-month payment (the "rent thing" as he called it). Mr. Milner made clear he did not "think that the agreement was void." He simply "stopped complying with the rent thing, that's it."

-

The separation agreement, Mr. Milner's counsel argued to the commissioner, was still binding with the exception of the $700 monthly payment obligation.  That provision, he insisted, had been superceded by the pendente lite order.  The commissioner disagreed, finding the separation agreement (with the exception of its child support provisions) continued to be "a valid agreement."  The commissioner held that the pendente lite decree dealt only with child support and did not affect Mr. Milner's continuing obligation to make the $700 monthly payments.  The $700-per-month payment constituted "an obligation above and beyond the child support," the commissioner ruled.  He added that, if the parties "wanted to change that $700, it had to be done . . . in writing."

In February 2002, the chancellor reviewed and approved the commissioner's findings regarding the continued binding effect of the separation agreement.  The chancellor also agreed that, even though the agreement elsewhere waived either party's right to further "spousal support" as such, the provision nonetheless imposed on Mr. Milner the $700-per-month obligation as "simply a form of temporary support" to help Mrs. Milner "get back on her feet financially, and that is distinct and separate from the child support."  The chancellor also rejected Mr. Milner's argument that the pendente lite decree addressed, much less vitiated, the $700-per-month obligation imposed by the separation agreement.

-

II.

A.

Mr. Milner first asserts that the chancellor had no authority to enforce the spousal support obligation arising out of the separation agreement because Mrs. Milner failed to request this specific form of relief in her bill of complaint. We agree with the underlying principle he relies upon, but disagree that it has not been properly applied in this case.

It is true that spousal support may not be awarded if the requesting party does not expressly request it in the pleadings. See, e.g., Fleming v. Fleming, 32 Va. App. 822, 826, 531 S.E.2d 38, 40 (2000); Reid v. Reid, 24 Va. App. 146, 149-50, 480 S.E.2d 771, 772-73 (1997); Boyd v. Boyd, 2 Va. App. 16, 17-18, 340 S.E.2d 578, 579 (1986). And, in keeping with this rule, Mrs. Milner's bill of complaint requested "support and maintenance for herself" in addition to child support. In reply, Mr. Milner's cross-bill asked that "spousal support be denied" to both parties. The pleadings, therefore, placed the issue of spousal support squarely before the trial court.

It is not true, however, that spousal support can only be awarded pursuant to a separation agreement when the initial pleading specifically identifies the agreement and asserts its applicability. The requirements for pleading "are not so strict as to demand specificity beyond that necessary to 'clearly [inform] the opposite party of the true nature of the claim or

-

defense' pled."  Balzer & Assocs. v. Lakes on 360, 250 Va. 527, 531, 463 S.E.2d 453, 456 (1995) (quoting Rule 1:4(d)); see also Rule 2:2 (An equity complaint, properly pled, implicitly includes request for "general relief as the nature of the case may require and to equity may seem meet . . . ."). Thus, notice pleading principles require fair warning of the form of relief, not its specific method of calculation.

We do not apply the standards of notice pleading inflexibly, but instead accept "substantial compliance" if it sufficiently informs the litigants and the trial court of the contested issues.  Gologanoff v. Gologanoff, 6 Va. App. 340, 348, 369 S.E.2d 446, 450 (1988).  "To hold otherwise would be to put form over substance, which we refuse to do."  Id.  Such concerns are particularly true where, as here, a chancellor acts within the broad boundaries of equity.  Johnson v. Buzzard Island Shooting Club, 232 Va. 32, 36, 348 S.E.2d 220, 223 (1986) ("Preferring substance over form, a court in equity may very properly mold the pleadings so as to ascertain the rights of the parties and thus end the litigation." (internal quotation marks and citation omitted)).

Guided by these general principles, we find no specific requirement in Code § 20-109.1 that separation agreements be expressly addressed in the initial pleadings.  Code § 20-109(c), moreover, permits litigants to file a separation agreement at any time "before entry of a final decree."  To be sure, it is

-

often the case that parties consummate agreements of this kind after suit has been filed. So long as a request for spousal support has been made in the pleadings, the chancellor must order such support in the amount agreed upon by the parties. See Code § 20-109(c) (If a valid separation agreement has been filed, no spousal support order "shall be entered except in accordance with that stipulation or contract.").

We hold that Mrs. Milner, by requesting spousal support in her bill of complaint, was entitled under Code § 20-109(c) to file the separation agreement and to seek enforcement of its contractual support terms. Nothing in the pleadings or the evidentiary proceedings causes us to believe that Mr. Milner, at any point in this litigation, failed to appreciate the nature or character of his wife's claim.

### B.

Mr. Milner next argues that, even if the chancellor had authority to enforce the separation agreement, he abused his discretion in doing so because he had previously "modified" the agreement by issuing the pendente lite decree and thereby released Mr. Milner of the $700-per-month obligation. We find no error in the chancellor's rejection of this argument.

Under settled principles, "when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court." Albert v. Albert,

-

38 Va. App. 284, 298, 563 S.E.2d 389, 396 (2002) (quoting Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc., 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000), and Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129, 510 S.E.2d 255, 260 (1999) (en banc)); see also Leitao v. Commonwealth, 39 Va. App. 435, 438, 573 S.E.2d 317, 319 (2002) (On appeal, "we defer to a trial court's interpretation of its own order."). The trial court's interpretive discretion, however, "must be exercised reasonably and not arbitrarily or capriciously." Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 412 (2002) (citation omitted).

The commissioner and chancellor were in complete agreement on their interpretation of the pendente lite decree. They found its terms applicable only to the then-pending request for child support, not to the enforceability of the $700 monthly payment in the separation agreement. The evidence surrounding the entry of the agreed order amply supports their view. The pendente lite notice did not identify the $700 monthly payment (or, for that matter, any spousal support issue) as a topic to be addressed at the hearing. The insertion of "n/a" into the paragraph of the pendente lite decree concerning spousal support, the chancellor reasonably concluded, simply meant the interlocutory order did not address the issue at all — not that all prior written agreements on the subject were necessarily "null and void" as Mr. Milner suggests. As to the statement in

-

the decree that "no support arrearages exist," here again, the chancellor understood this language to apply only to the child support issue — the only support issue addressed by the court at the <u>pendente</u> <u>lite</u> hearing.

For these reasons, the chancellor did not abuse his discretion in interpreting the <u>pendente</u> <u>lite</u> decree as he did. Under the chancellor's interpretation, the decree did not "modify" or render "null and void" Mr. Milner's preexisting contractual obligation to make the $700 monthly payments.  This reasonable interpretation of the decree falls well within the latitude we afford trial courts in the construction of their own decrees.

As the commissioner and the chancellor both noted, Code §§ 20-153 and 20-155 provide that separation agreements may be modified or rescinded only in writing.  See <u>Smith v. Smith</u>, 19 Va. App. 155, 157, 449 S.E.2d 506, 507 (1994).  At no time did the parties or the trial court modify or rescind in writing the $700-per-month support obligation imposed by the separation agreement.  It thus retained its legal vitality and, in the chancellor's discretion, could be incorporated into the final decree.  <u>See</u> Code § 20-109.1 ("Any court may affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce . . . any valid agreement between the parties, or provisions thereof . . . .").

-

## III.

In sum, the trial court did not abuse its discretion by enforcing Mr. Milner's obligation to pay $700 a month (from June 2000 to June 2003) as a contractual "form of temporary support." Mrs. Milner's request in her bill of complaint for spousal support placed the issue before the court, and the chancellor acted within his discretion by resolving that issue in her favor.

<u>Affirmed</u>.