## CIRCUIT COURT OF FAIRFAX COUNTY

Mary Elizabeth Sanders Grzyb

v.

Michael Thomas Grzyb

June 12, 2009

Case No. CL 2008-4659

BY JUDGE RANDY I. BELLOWS

*Defendant's Motion to Authorize Health Care Decision*

This case arises out of a profound disagreement between the parties as to whether their daughter should receive routine immunizations, to which the mother objects on religious grounds. While the parties have fully briefed both the First Amendment issues and issues related to the invocation of the statutorily-provided religious exemption to mandatory immunizations, see Va. Code Ann. § 32.1-46(D)(1) (2004 & Supp. 2007), this Court does not need to go beyond a traditional child custody analysis to resolve this dispute. Having said that, this case does present a question of first impression in Virginia. Where both parents share legal and physical custody of a child, which parent has the right to assert and enforce the statutory religious exemption to mandatory vaccination? For the reasons described below, this Court does not reach or resolve this question.

## A. *Background*

On September 19, 2008, this Court entered a Final Custody Order which, *inter alia*, prohibited the relocation of the parties' child from Virginia to South Carolina and which awarded the parties joint legal custody and shared physical custody. (See Final Custody Order, Sept. 19, 2008.)

On November 25, 2008, Mr. Grzyb filed a "Motion to Authorize Health Care Decision," requesting that the Court enter an order authorizing Mr. Grzyb to have sole decision-making authority concerning health care decisions for the child. The principal basis for this request was Mrs. Grzyb's refusal to permit the child to have routine immunizations.

On March 2 and March 3, 2009, the Court took testimony on this matter and, then, continued the trial to April 15, 2009. In the interim, the Court ordered the filing of briefs on various statutory and constitutional issues. The trial was concluded on April 15 and the Court ordered the filing of closing arguments in writing. The final briefs were submitted on May 13, 2009. The parties were divorced on May 27, 2009.

The matter is now ripe for decision.

## B. *Has There Been a Material Change in Circumstances*

On September 19, 2008, this Court awarded the parties joint legal custody of the child, which implicitly included joint decision-making regarding the child's medical and health care. This Court cannot revisit that decision unless it concludes that there has been a material change in circumstances. See, e.g., *Albert v. Albert*, 38 Va. App. 284, 293, 563 S.E.2d 389 (2002). This Court has no difficulty finding that a material change in circumstances exist in that the parties have reached a complete impasse on whether to give the child routine immunizations and, almost as significantly, do not appear to be willing or able to work toward a resolution of this matter. Nor is this the only health care issue about which the parents disagree. Significantly, they also cannot agree as to whether the child requires additional testing by an allergist to determine whether certain ongoing symptoms are allergy-related. They have even disagreed on an issue as basic as whether the child should have received antibiotics for what was either a sinus infection or a cold. The notes made by the child's pediatrics practice demonstrates that the child's physician has been placed in the middle of the parties' disagreements. (See Pl.'s Ex. 4.)

To date, all that has been accomplished by this Court's assigning to the parents joint decision-making on medical issues is that the parties are at a complete stalemate. With a child this young, there are numerous other medical

issues just over the horizon and the inability or unwillingness of the parties to make decisions on medical matters can be just as, or even more, damaging and consequential as the making of wrong decisions.

Therefore, this Court believes it to be in the child's best interest to assign one parent sole decision-making authority regarding the child's health and medical care. Significantly, both parents agree that the Court needs to assign one parent this sole authority. They part company, of course, as to which parent that ought to be.

## C. *The Disagreement over Immunization*

### 1. *Undisputed Findings*

The child has received no immunizations to date. Mrs. Grzyb opposes routine immunization for the child. Mr. Grzyb supports routine immunization for the child. That is, in sum, the only facts upon which the parties agree.

### 2. *When the Parties Were Together, Were They Both Opposed to Immunization*

The parties now dispute whether, when they were still together, they agreed that the child should not be immunized. Mr. Grzyb states that this was never his view. Mrs. Grzyb states that the parties were in harmony on this issue. Indeed, she states that she "[n]ever" heard of Mr. Grzyb's opposition to Mrs. Grzyb's decision not to immunize until August of 2008 when the parties were in the middle of child custody litigation. During the course of the marriage, says Mrs. Grzyb, both "would discuss what we agreed on and what we thought were problems in other children due to vaccinations." (Trial Tr. 35, Apr. 15, 2009.)

The Court finds Mrs. Grzyb more credible on this issue, in particular because two other witnesses who know both parties, Brigette Terbrock[1] and Lisa Kale,[2] both testified that, in the course of the marriage, Mr. Grzyb

---

[1] See Trial Tr. 140-41, Mar. 2, 2009, test. of Ms. Terbrock: "Q. What did you learn from Mr. Grzyb about his position with respect to vaccinations? A. That him and Beth both agreed not to have [the child] immunized. Q. Did he say that to you during the time you had contact with him once or more than once? A. More than once, and it was actually not a discussion to me; it was at a dinner table, and it was a discussion to Lisa and Joe Kale."

[2] See Trial Tr. 145-46, Mar. 2, 2009, test. of Lisa Kale: "Q. What did you come to

expressed his opposition to immunization. While Mr. Grzyb seeks to *discount* their testimony, asserting that these are Mrs. Grzyb's "cohorts and confidants," and would "[a]bsolutely" lie for her, the Court found the testimony of each of these witnesses to be credible. (Trial Tr. 36, Mar. 3, 2009.)

This leaves the question: Why is it significant that Mr. Grzyb previously shared Mrs. Grzyb's objections to immunization, especially since Mr. Grzyb now seeks an order authorizing him to have the child immunized? The reason is that it calls into question the sincerity of Mr. Grzyb's current objection to immunization and suggests to this Court that Mr. Grzyb's objections are animated, in part, by the hostility that now suffuses the relationship between the parties. That further reinforces the Court's view that it must assign to one parent sole decision-making authority on medical and health care issues for the child.

### 3. *Does Mrs. Grzyb Have a Bona Fide Religious Objection to Immunization*

The parties disagree as to whether Mrs. Grzyb has a *bona fide* religious objection to immunization.

Mr. Grzyb argues that Mrs. Grzyb has herself had immunizations before going overseas and that she had a rubella injection during in vitro fertilization ("IVF") treatment. Mrs. Grzyb testified that the immunizations she had were in 2002 prior to becoming pregnant with the child and prior to developing her religious objection to immunization. (Trial Tr. 35-36, Apr. 15, 2009.) Mrs. Grzyb also testified that she would not have been permitted to enter into IVF treatment without the rubella vaccination. (Trial Tr. 37, April 15, 2009.) Mr. Grzyb also argues that Mrs. Grzyb has had cosmetic surgery in the past and has taken a prescription medication. Further, Mr. Grzyb asserts that Mrs. Grzyb has made inconsistent statements about whether the child should eventually be immunized and has also expressed medical and scientific objections to immunizations. For all these reasons, argues Mr. Grzyb, the Court should find that Mrs. Grzyb's "religious objection is not a *bona fide* spiritual conviction but an attempt to manipulate the Court." (Def.'s Closing Arg. 6.)

---

understand were the views of Mr. and Mrs. Grzyb about vaccinations? A. One time after Mike had — I was pregnant at the time — and Mike said oh, you really need to talk to Beth. She has researched all of this stuff, and you know, we are not doing any vaccinations, and you really need to talk to her because she has read all the things about it. Q. Did he ever at any time indicate that he disagreed and thought that the child should be vaccinated? A. No."

Mrs. Grzyb, on the other hand, testified to her religious objection to routine immunization. She testified that she first formed a religious objection to vaccinations when she was pregnant with the child, that she "prayed about it a lot," and felt "led by the Holy Spirit" to the conclusion that the child should not receive routine immunizations. (Trial Tr. 39-41, Apr. 15, 2009.) She testified that "I never felt so strong about anything outside of faith as I do about vaccination." *Id.* at 39. In addition, Ms. Grzyb's pastor, the Reverend Scott Mauer, the administrative pastor at Fair Oaks Church in Fairfax, Virginia, testified on this issue. Both Mr. and Mrs. Grzyb had been members of the church, although only Mrs. Grzyb is a member of this church at present. Reverend Mauer indicated that it was not a tenet of his religion that children remain unvaccinated. Rather, he testified that "this falls into an area that we would consider to be what the Bible often refers to as disputable matters, which are areas that the Bible does not necessarily address directly." (Trial Tr. 60-61, Mar. 3, 2009.) He continues:

> in those cases, historically the position that the Baptist Church has taken is that a person should apply the best understandings of our truth of the scripture and also the sensitivities believing as the Holy Spirit and come to a conviction about it. And that furthermore if they do come to a conviction based upon those things, that they are then to be obedient to that conviction because the Bible is clear that, if a person has come to a conviction that they do believe is from God, that to the best of their ability that they believe that in good faith before the Lord, that if they do not then pursue that directive of that decision that they are in sin.

Finally, Rev. Mauer testified that he did not have any doubts that Mrs. Grzyb had a religious conviction about vaccinations: "Based on the conversations that have occurred and based on what I know just about her testimony and the patterns of her life and her sincerity to serve the Lord, I don't have any doubts about that." *Id.* at 61.

The Court finds Mrs. Grzyb's religious objection to routine immunization to be *bona fide* and genuine. That a parent could have a *bona fide* religious objection to immunization is illustrated by the fact that the General Assembly of Virginia has explicitly recognized that a parent could have religious objections to immunizations and that those objections warrant an exception to the mandatory immunization requirements of Virginia Code § 32.1-46(D)(1). Undoubtedly, Mrs. Grzyb also has substantial medical and

scientific concerns regarding immunization, but that does not make her religious convictions any less sincere and authentic. Specifically, the Court rejects Mr. Grzyb's assertion that Mrs. Grzyb has adopted her religious objections to immunization for the purpose of "manipulat[ing]" the Court.

### 4. *The Medical Evidence before the Court*

Initially, both parties called an expert witness on the issue of the risks and benefits of routine immunization.

Mrs. Grzyb's expert was Dr. Andrew Moulden, a Canadian-educated physician who also holds a doctorate in clinical neuropsychology. Dr. Moulden testified to the risks associated with routine immunizations. He completed his direct examination on March 3, 2009, but was not cross-examined on that date. He was scheduled to return to court to be cross-examined when trial resumed in April. The Court advised the parties that, if Dr. Moulden did not return for cross-examination, the Court would not be able to consider his testimony. At the start of the hearing on April 15, Mrs. Grzyb's counsel advised that Dr. Moulden would not be returning to court, "primarily [for] financial [reasons.]" (Trial Tr. 3, Apr. 15, 2009.) Because Mr. Grzyb's counsel had never had the opportunity to cross-examine Dr. Moulden, his testimony was struck in its entirety. (Trial Tr. 5, Apr. 15, 2009.)

Mr. Grzyb called Dr. Neil Arthur Halsey, a Johns Hopkins University pediatrician who trained in epidemiology and preventive medicine and infectious diseases. Dr. Halsey was qualified as an expert in pediatric infectious diseases and vaccine safety. Dr. Halsey indicated that he had testified a number of times previously as an expert witness, including approximately ten times in connection with the federal vaccine injury compensation program. The Court found Dr. Halsey to be entirely credible. While Dr. Halsey never examined the child, he did speak with the child's treating physician. Dr. Halsey testified that there were no contraindications to the child's receiving routine immunizations and that he recommended the Prevnar, MMR, DPT, polio, Hepatitis B, varicella, and flu vaccines. He acknowledged that "all vaccines carry with them some risk" but that the risk of "serious complications" was "very low" and that she is "at greater risk of the diseases that the vaccines protect against, absolutely. . . ." (Trial Tr. 61, 68, Mar. 2, 2009.)

Thus, the evidence before the Court is uncontradicted and undisputed that the child would benefit if she received routine vaccinations.

D. *Which Parent Can Best Make Decisions for the Child Regarding Health and Medical Care Issues*

For the reasons stated below, this Court has no doubt that Mrs. Grzyb is in a better position to make health and medical decisions for the child.

At the outset, this Court would note that it has considered each of the factors set out in Virginia Code § 20-124.3. Certain of the factors are discussed in some detail below.

*Age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs*

The child is approximately three-and-one-half years old. She is in good physical and mental health, other than some chronic symptoms, such as post-nasal drip, which may be indicative of allergies. She has received no immunizations to date, for the reasons discussed above.

*The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual, and physical needs of the child*

When this Court first determined to grant the parties joint legal and physical custody, it was despite the fact that the Court perceived Mrs. Grzyb to be "slightly in a better position to accurately assess and meet the emotional, intellectual, and physical needs of the child because she has spent more time with [the child] and I think is in a slightly better position to assess her needs." (Trial Tr. of Ruling, 9-10, Aug. 19, 2008.) Mrs. Grzyb, in the intervening months since August 2008, has continued to demonstrate that she is in a better position to ascertain and address the child's medical and health needs. Mrs. Grzyb remains the parent primarily responsible for attending to the child's medical needs. There have been numerous visits and phone calls to the child's pediatrician and, for the most part, it has been Mrs. Grzyb who is the parent interacting with the child's pediatrician and the pediatric practice. Mrs. Grzyb is the parent who took the initiative to obtain a referral to an allergist because of the child's persistent colds, runny nose and cough, and a family history of wheat allergies. Mrs. Grzyb has thoughtfully and fully explored each medical issue that has arisen in the child's life.

The Court's sole reservation in finding Mrs. Grzyb to be in a superior position to assess and meet her child's medical needs is the very decision that brings the parties to Court today, i.e., Mrs. Grzyb's decision not to have the

child undergo routine vaccinations. As stated above, the medical testimony is uncontradicted that the child would benefit from the vaccinations. There are, however, two significant points that should be made in this connection.

First, Mrs. Grzyb's objection to routine immunization is substantially, although not exclusively, a religious, rather than a medical, objection. This is significant because the Court has concluded that the medical benefits of immunization outweigh the medical risks of immunization.

Second, Mrs. Grzyb's objection is to *routine* vaccination and does not extend to vaccinations that are medically indicated due to a specific exposure to a particular disease. Thus, she testified that she would allow a tetanus or rabies vaccine if her child was specifically exposed to those diseases. (Trial Tr. 41, Apr. 15, 2009.)

*The needs of the child, giving due consideration to other important relationships of the child*

What the child most needs on the critical issue of medical and health matters is consistent, conscientious, and thoughtful decision-making. Unfortunately, due to the differences between the parties and their inability to productively communicate on these issues, the child, as well as her doctors, are being pulled in different directions.

*The role that each parent has played and will play in the future in the upbringing and care of the child*

Both parents are substantially and productively engaged in raising the child, consistent with the current custodial schedule.

*The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child*

Each parent asserts that the other parent is uncommunicative on medical and health care decision-making. Mr. Grzyb, for example, complains that he was not consulted before Mrs. Grzyb arranged for the child to see an allergist (Trial Tr. 26, Mar. 3, 2009) and before Mrs. Grzyb submitted written instructions to the pediatrician forbidding routine vaccinations. *Id.* at 27. Mrs. Grzyb, on the other hand, complains that Mr. Grzyb would not read and discuss the literature she provided him regarding the risks of routine vaccinations (Trial Tr. 57-58, Apr. 15, 2009) and that he did not consult with

Mrs. Grzyb before having the child put on antibiotics. *Id.* at 42-43. The parties inability to productively communicate on an issue of this magnitude supports the Court's judgment that medical and health care decision-making must be assigned to one parent.

In summary, and after considering each of the factors set forth in the statute, the Court concludes that it is in the child's best interest for one parent to have sole authority on medical and health care decision-making and that the parent who is most able and capable to make those decisions is Mrs. Grzyb.

E. *Conclusion*

For the reasons stated above, the Court assigns Mrs. Grzyb sole and full medical and health care decision-making for the child. Specifically, this authority includes the right to determine whether the child shall have routine immunizations. As to the question presented at the outset of this opinion, *i.e., where both parents share legal and physical custody of a child, which parent has the right to assert and enforce the statutory religious exemption to mandatory vaccination*, the Court does not need to resolve this question because the Court has vested in Mrs. Grzyb sole medical and health care decision-making. Whether a parent who is not empowered with medical and health care decision-making would have the right to invoke and enforce the religious exemption to mandatory vaccination against the wishes of the parent who is empowered with medical and health care decision-making is a matter not before the Court in light of the Court's custody determination. As important as this question may be, courts do not decide matters because they are important but, rather, because they must be decided in order to resolve the controversy at hand.

Finally, the Court would emphasize that, while Mrs. Grzyb retains final decision-making authority on medical and health care decisions, she must seek to consult and consider Mr. Grzyb's views and recommendations on significant medical and health care decisions. Her failure to do so may be viewed by the Court as a material change in circumstances warranting a review of this decision.

*Order*

Upon consideration of the trial testimony, the parties' arguments, and the briefs filed on Defendant's "Motion to Authorize Health Care Decision," the Court finds that it is in the best interest of the parties' child for one parent to have sole decision-making authority over the child's health and medical

decisions. The court, further, finds that Plaintiff is a better position to make health and medical decisions for the parties' child. Therefore, the court orders that Plaintiff is awarded sole decision-making authority over the child's health and medical decisions. However, the court, further, orders that Plaintiff must consult and consider Defendant's views and recommendations when making significant health and medical decisions for the child. It is so ordered.