COURT OF APPEALS OF VIRGINIA


Present:   Judges Powell, Alston and Senior Judge Annunziata
Argued at Alexandria, Virginia


WAYNE F. MOORE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0117-10-4              JUDGE ROSSIE D. ALSTON, JR.
                                                          MARCH 1, 2011
RUTH DORIS MOORE


                FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                              Mary Grace O'Brien, Judge

            Christopher Malinowski (Dennis M. Hottell; Donna M. Dougherty;
            Cynthia M. Radomsky; Alyssa D. Emery; Hottell Malinowski
            Group, P.C., on brief), for appellant.

            Barbara Murphy Stough (Knight & Stough, LLP, on brief),
            appellee.


        Wayne F. Moore (husband) appeals the trial court's equitable distribution award, granted

in a final decree of divorce, on the following grounds:  1) the trial court erred in ordering

husband to name Ruth Doris Moore (wife) as a beneficiary of his life insurance policy; 2) the

trial court erred in ordering monetary awards exceeding the value of the marital assets as of the

trial date where a motion for alternative valuation date was not timely filed; 3) the trial court

erred in classifying husband's Ameriprise account as marital property; and 4) in the alternative,

if the Ameriprise account was properly classified as marital property, the trial court erred in

dividing the marital estate without properly considering the statutory factors set forth in Code

§ 20-107.3(E).  For the reasons that follow, we affirm in part and reverse in part the decision of

the trial court.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

A. Marriage and Separation

"On appeal, we construe the evidence in the light most favorable to wife, the prevailing party below, granting to her all reasonable inferences fairly deducible therefrom." Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995). So viewed, the evidence indicated that the parties married on August 1, 1998, in the Seychelles Islands, where wife resided at the time. Subsequently, husband and wife had two children. During the marriage, wife primarily remained at home as the children's caregiver, although she temporarily held jobs as a bus monitor and a commissary bagger. Husband, who was employed by the United States Navy, handled the parties' finances during their marriage. During their marriage, the parties maintained several financial accounts, discussed below.

The parties separated in May 2008. Wife filed a complaint for divorce on April 29, 2009. The final decree of divorce was issued on December 21, 2009.

B. Ameriprise Account

In 2005, while the parties were married, husband deposited $200,000 into an investment account with Ameriprise.

In May 2008, the same month the parties separated, husband deposited $69,374 into the Ameriprise account. On May 30, 2008, husband withdrew $69,000 from the Ameriprise account. Husband used this money to purchase a house.

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

On September 30, 2009, husband withdrew $77,316.67 from the Ameriprise account, leaving $37,402 remaining in the account. At the time of trial, husband retained the $77,316.67 in his possession.

At trial, wife submitted bank statements showing the Ameriprise account balances in March 2008, May 2008, January 2009 through March 2009, April 2009 through June 30, 2009, and July 2009 through September 2009. The statements showed multiple deposits and withdrawals made by husband, as well as the account's value of $37,402 at the end of September 2009. Wife's name was not listed on the Ameriprise account; however, wife testified that she was aware that husband made deposits into the account during their marriage. Husband testified that the Ameriprise account was funded exclusively with money saved by husband before the parties were married.

### C. Navy Federal Credit Union Account

During their marriage, the parties also maintained an account with the Navy Federal Credit Union (NFCU). The parties agree that the NFCU account is a marital asset. At trial, wife introduced into evidence bank statements showing a balance of $58,205.37 in the NFCU account as of September 30, 2009.

### D. Life Insurance Policy

At trial, husband testified that he had a life insurance policy through the military worth $400,000 and that wife was a one-fourth beneficiary on this policy. In addition, husband testified as follows concerning the life insurance policy:

> Q: In lieu of the [Survivor Benefit Plan (SBP)], would you be willing to designate a part of that life insurance policy to your wife in lieu of the expense that she would incur or that you might incur, if the Judge orders you to carry it, for the SBP?
>
> A: As I said, with the SBP, once we got divorced, she can't carry it. It automatically drops. So, she would have to pay for it.

Later, husband again testified regarding the life insurance policy.

Q: Who currently is the beneficiary on that policy?

A: My wife.

Q: You can't remove her name without her signature, can you?

A: That's not true. That's mine. I can do anything I want with it.

Q: After you're divorced. You can't do anything with it –

A: No. I don't want to remove her name but I'm saying her name
is on there. My kids are on there and I have four people on there
. . . .

## E. Other Marital Assets

In addition to the bank accounts and life insurance policy, the parties owned a Dodge Caravan. The parties' children had bank accounts of no value as of the trial date.[2]

## F. Trial Court's Order

On November 13, 2009, wife filed a motion, pursuant to Code § 20-107.3, requesting an alternate valuation date, instead of the date of trial, for the determination of the value of the Ameriprise and NFCU accounts. The trial court denied wife's motion on the basis that it was not filed within 21 days before the evidentiary hearing, as required by Code § 20-107.3.[3]

After the evidentiary hearing, the trial court found that both the Ameriprise and NFCU accounts were marital assets. In its oral ruling, the trial court stated, "I am going to decline to use an alternate evaluation date on the accounts with the exception that I am going to find that both the $77,000, which was taken out in the fall for living expenses, and the $69,000, which was taken out of [the Ameriprise account], is marital property so that [wife] would be entitled to

---

[2] Because husband's questions presented do not address the award of the Dodge Caravan to wife, we decline to address this issue on appeal.

[3] Wife does not challenge the trial court's denial of this motion on appeal.

half of that in the monetary award which would be, I think $38,500 and $34,500." The trial court determined that the NFCU account should be valued as of the date of trial, and ordered a monetary award of $29,404.69 to wife based on the valuation of that account.

On December 18, 2009, a contested hearing for the entry of a final decree of divorce was held. Husband noted his exceptions, both orally and in writing, to the final decree of divorce proposed by the trial court. Based on the trial court's earlier statement that it declined to use an alternate valuation date, "with the exception" that it found the $77,000 and $69,000 taken out of the Ameriprise account to be marital property, husband objected that the trial court had in fact used an alternate valuation date with regard to those monies. The trial court overruled husband's objection, stating, "I declined to use an alternate valuation date. And when I awarded [wife] half of the [$]77,316 and half of the [$]69,000, that was not under a theory of using an alternate valuation date."

On December 21, 2009, the trial court entered the final decree of divorce. The final decree of divorce ordered husband to continue to name wife as one of four equal beneficiaries on his $400,000 life insurance policy, ordered husband to pay $29,404.69 to wife within 90 days, which the trial court found represented an award of 50% of the value in the marital NFCU account on the date of trial, ordered husband to pay $18,701 to wife within 90 days, which the trial court found represented an award of 50% of the marital Ameriprise account on the date of trial, ordered husband to pay monetary awards of $38,658.34 and $34,500 to wife within 90 days based upon the withdrawals from the Ameriprise account made prior to trial, which the trial court classified as marital assets, and awarded the Dodge Caravan, which the trial court classified as marital property, to wife.

This appeal followed.

<u>Analysis</u>

A. Wife's Motion to Dismiss the Instant Appeal

Wife filed a motion to dismiss husband's appeal under Rule 5A:18 or, in the alternative, on the ground that husband's appeal is barred because he voluntarily paid the judgment owed to wife before the judgment was entered and therefore lost his right to appeal under <u>Citizens Bank & Trust Co. v. Crewe Factory Sales Corp.</u>, 254 Va. 355, 492 S.E.2d 826 (1997). For the reasons that follow, we deny wife's motion to dismiss.

Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."[4] To satisfy Rule 5A:18, "an objection must be made . . . at a point in the proceeding when the trial court is in a position, not just to consider the asserted error, but also to rectify the effect of the asserted error." <u>Johnson v. Raviotta</u>, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002). The purpose of the rule "is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." <u>Weidman v. Babcock</u>, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991).

Wife argues that husband's objections to the trial court's ruling were not timely because husband did not object to the trial court's oral ruling on December 2, 2009. However, husband noted his objections to the trial court's ruling both orally and in writing at the December 18, 2009 hearing for entry of a final decree of divorce. At this point, the trial court was still capable

---

[4] As of July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. <u>See</u> <u>Fails v. Va. State Bar</u>, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

of ruling intelligently on the issues presented. Thus, husband's objections made on December 18, 2009, were timely for the purposes of Rule 5A:18.

Wife also argues that husband's appeal should be dismissed because he voluntarily paid the monies owed to wife under the final decree of divorce before a judgment could be entered. Husband does not contest wife's claim that he has made payments to her under the final decree of divorce. "The general rule is that the payment of a judgment deprives the payor of a right of appeal only if payment was made voluntarily." Carlucci v. Duck's Real Estate, Inc., 220 Va. 164, 166, 257 S.E.2d 763, 765 (1979); see also Citizens Bank & Trust Co., 254 Va. at 355, 492 S.E.2d at 826 (stating that "[v]oluntary payment of a judgment deprives the payor of the right of appeal"). Thus, if payment is made involuntarily, the payor is not deprived of his right of appeal.

Although we find no published appellate decisions in Virginia holding precisely when a payment is voluntary or involuntary, other decisions provide support for the conclusion that the payment of a monetary award based on a final decree of divorce after noting objections and filing an appeal is not "voluntary" payment.[5] In Wells v. Wells, No. 2601-96-4, 1997 Va. App. LEXIS 703, at *4 (Nov. 18, 1997), this Court held that a husband's payment of a judgment from a final decree of divorce was not voluntary because "husband objected to the trial court's entry of judgment against him and satisfied the judgment after he had properly noted his appeal . . . ."

Similarly, in the case at bar, wife concedes that husband paid the judgment from the final decree of divorce only after he had noted his appeal. Furthermore, husband noted his objections to the final decree of divorce at the time it was entered. Thus, husband's payment cannot be considered "voluntary," and his appeal was not waived by his payment.

---

[5] "Although an unpublished opinion of the Court has no precedential value, a court . . . does not err by considering the rationale and adopting it to the extent it is persuasive." Fairfax Cnty. Sch. Bd. v. Rose, 29 Va. App. 32, 39 n.3, 509 S.E.2d 525, 528 n.3 (1999) (*en banc*) (citation omitted).

B. Life Insurance Policy

Husband argues that the trial court erred in ordering husband to name wife as a beneficiary of his life insurance policy because husband did not agree to name wife as a beneficiary of his life insurance policy and the trial court was barred from so ordering without husband's agreement.

Husband is correct that, in the absence of a written agreement, the trial court lacked authority to order husband to maintain life insurance for the benefit of wife in this case. Code § 20-107.3(G)(2) provides

> To the extent permitted by federal or other applicable law, the court may order a party to designate a spouse or former spouse as irrevocable beneficiary during the lifetime of the beneficiary of all or a portion of any survivor benefit or annuity plan of whatsoever nature, *but not to include a life insurance policy*. The court, in its discretion, shall determine as between the parties, who shall bear the costs of maintaining such plan.

(Emphasis added). In Lewis v. Lewis, 53 Va. App. 528, 542, 673 S.E.2d 888, 895 (2009), the Court held that "under Code § 20-107.3(G)(2), a trial court cannot order that a person obtain life insurance on himself for the benefit of a former spouse." However, courts can enforce a written agreement between former spouses that one will obtain life insurance for the benefit of the other. See Sullivan v. Sullivan, 33 Va. App. 743, 750, 536 S.E.2d 925, 929 (2000) (upholding a trial court's order that the husband maintain a life insurance policy during his life based on a written agreement between the husband and the wife in which the husband agreed to do so).

In this case, the trial court found that, based on husband's testimony, husband had agreed to maintain wife as a beneficiary of his life insurance policy.[6] However, because the agreement

---

[6] Husband challenges the trial court's factual finding that he either stipulated and agreed or testified that he would maintain life insurance for wife's benefit. Based on our ruling herein, we need not address this issue.

was not in writing, the trial court erred in ordering husband to maintain wife as a beneficiary of his life insurance policy.

We find no Virginia precedent in which a trial court ordered one spouse to maintain a life insurance policy with the other spouse named as a beneficiary without a written property settlement agreement specifying such an arrangement. Furthermore, Code § 20-109.1 provides the mechanism through which a trial court may order the maintenance of a life insurance policy with one spouse as the beneficiary based on the spouses' agreement. Code § 20-109.1 provides,

> Any court may affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce . . . any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary. . . . Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree. . . .

Furthermore, Code § 20-155 provides,

> Married persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them, to the same extent, with the same effect, and subject to the same conditions, as provided in §§ 20-147 through 20-154 for agreements between prospective spouses, except that such marital agreements shall become effective immediately upon their execution.

Code §§ 20-150 and 20-149, which govern marital agreements through Code § 20-155, are instructive in the instant case. Code § 20-150 provides that parties may enter into agreements

with respect to "the disposition of property upon separation [or] marital dissolution . . . ." Code § 20-149 requires that such agreements "be in writing and signed by both parties."[7]

Thus, while a trial court may order one former spouse to maintain the other former spouse as a beneficiary of a life insurance policy based on the agreement of the former spouses, this agreement must be in writing and signed by both parties, as required by statute. In this case, despite the trial court's reliance on what wife argued were the representations of husband that he would maintain wife as a beneficiary of his life insurance policy, there was no written agreement concerning maintenance of life insurance.[8] Therefore, the trial court erred in finding, based on husband's testimony alone, that husband had agreed to maintain wife as a beneficiary of his life insurance policy. In the absence of a written agreement, the trial court was simply without authority to order husband to maintain wife as a beneficiary of his life insurance policy.

---

[7] We note that Code § 20-155 provides,

> If the terms of [a marital] agreement are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is not required to be in writing and is considered to be executed.

In the case at bar, there was no court order reflecting an agreement by the parties that husband would maintain wife as a beneficiary of his life insurance policy. Furthermore, we find nothing in the record showing an agreement "recorded and transcribed by a court reporter and affirmed by the parties . . . personally." Even assuming husband's testimony could be interpreted as agreeing to maintain wife as a beneficiary of his life insurance policy, this testimony does not satisfy the requirements of Code § 20-155(ii), as wife did not testify regarding the alleged agreement, and no terms of the alleged agreement were recorded and transcribed on the record. Thus, this provision of Code § 20-155 is inapplicable in the instant case.

[8] Wife conceded at oral arguments that, at most, the evidence showed merely an oral representation on the part of husband that he would not remove wife from the life insurance policy, which the trial court did not have the authority to enforce in the absence of a written agreement.

C.  Alternate Valuation Date

Husband also argues that the trial court erred in ordering monetary awards exceeding the value of the marital assets as of the trial date where a motion for alternative valuation date was not timely filed.

"The value of property is an issue of fact, not of law."  Howell v. Howell, 31 Va. App. 332, 340, 523 S.E.2d 514, 518 (2000).  Thus, the trial court's finding regarding the value of the Ameriprise and NFCU accounts is reviewed in the light most favorable to the party prevailing below, in this case, wife.  Shackelford v. Shackelford, 39 Va. App. 201, 207, 571 S.E.2d 917, 919 (2002).  Because the value of property

> must depend on the facts of the case, we give great weight to the findings of the trial court.  We affirm if the evidence supports the findings and if the trial court finds a reasonable evaluation based on proven methodology and on the application of it to the particular facts of the case.

Howell, 31 Va. App. at 339, 523 S.E.2d at 518.  Furthermore, "[f]ashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it."  Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

The trial court in this case valued the NFCU account at $58,809.37 and awarded wife 50% of its value, or $29,404.69.  The trial court valued the Ameriprise account at $37,402 and awarded wife $18,701, representing 50% of its value.  The final decree of divorce stated that the trial court valued both the NFCU and Ameriprise accounts as of the date of the hearing.

At trial, wife introduced bank statements showing that as of September 30, 2009, just over two months before the date of the trial, the Ameriprise account contained $37,402 and the NFCU account contained $58,809.37.  Neither party presented evidence of the value of the accounts after September 30, 2009.

We hold that the trial court did not err in relying upon evidence of the accounts' value on September 30, 2009, to determine the accounts' value as of December 2, 2009, the date of the evidentiary hearing. The facts of Gamble v. Gamble, 14 Va. App. 558, 421 S.E.2d 635 (1992), are instructive in the instant case. In Gamble, the trial court relied upon a tax appraisal from January 1, 1989, to determine the value of the marital home nearly eighteen months later, on June 27, 1990, the date of trial. Id. at 562, 421 S.E.2d at 638. The Court in that case held that the trial court had not applied an alternate valuation date, nor had it erred in relying upon the January 1, 1989 tax appraisal to determine the value of the house as of June 27, 1990. Id. at 563, 421 S.E.2d at 638.

Similarly, in this case, the trial court did not use an alternate valuation date. Instead, it clearly declared that it declined to use an alternate valuation date, and valued the accounts as of the date of trial. Specifically, the trial court stated in the final decree of divorce that both the NFCU and Ameriprise accounts were "valued as of the date of this hearing" and that it "decline[d] to use an alternate evaluation date" on other monetary accounts at issue, including the $77,316.67 and $69,000 withdrawn from the Ameriprise account by husband. Furthermore, the trial court did not err in relying upon evidence of the value of the accounts just over two months before the date of trial to determine the accounts' value on the date of trial. Husband presented no evidence that the value of the accounts decreased after September 30, 2009. Just as in Gamble, the trial court was entitled to give more weight to wife's evidence of the value of the accounts, especially in light of husband's failure to provide any evidence of the accounts' value at all. Thus, the trial court was not plainly wrong in determining that the September 30, 2009 statements reflected the value of the accounts on the date of the evidentiary hearing. Accordingly, we hold that the trial court did not err in valuing the Ameriprise account at $37,402 and the NFCU account at $58,809.37.

Husband also argues that the trial court erred in awarding wife 50% of the $77,316.67 and $69,000 withdrawn by husband from the Ameriprise account. Husband argues that this award was in error because it resulted in an award in excess of the value of the marital assets on the date of trial. The trial court classified both the $77,316.67 and $69,000 withdrawn by husband from the Ameriprise account as marital property. Husband retained the $77,316.67 as of the date of trial. Thus, although the $77,316.67 was no longer in the Ameriprise account, it was nonetheless marital property and subject to equitable distribution. Code § 20-107.3(C).

In addition, the trial court classified the $69,000 as marital property. Husband argues that the trial court erred in its classification and distribution of the $69,000 because, as of the date of trial, husband had spent the $69,000 to purchase a house. Code § 20-107.3(E)(2) instructs that a trial court is to consider "[t]he contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties" in determining equitable distribution of marital property. "This Court has made clear that both affirmative and negative monetary contributions to the marital partnership are to be considered." Barker v. Barker, 27 Va. App. 519, 537, 500 S.E.2d 240, 248 (1998). Moreover, "[a] court need not find waste in order to consider negative contributions in fashioning an equitable distribution award," id. at 537, 500 S.E.2d at 249, and "[t]here are no time limitations in [Code § 20-107.3(E)(2)] delineating when the negative contributions must occur," Mir v. Mir, 39 Va. App. 119, 125, 571 S.E.2d 299, 302 (2002) (basing a finding of negative contribution to the parties' marital property, in part, on "husband's failure to care for the [marital] home when he was the sole occupant" *after* the date of separation). From the record in this case, we cannot conclude that the trial court erred in considering husband's appropriation of this asset as a negative contribution to the marriage. Moreover, the fact that husband no longer had the $69,000 does not change the value of the

$69,000, and the trial court did not err in awarding wife 50% of the value of the $69,000 as a marital asset.

### D. Classification of the Ameriprise Account

Husband argues in the alternative that the trial court erred in classifying the Ameriprise account as marital property. Husband argues that the Ameriprise account was separate property because it was created entirely with money he had acquired before his marriage to wife.

All property acquired by either spouse during the marriage and before the last separation of the parties is presumed to be marital property, and "[t]he party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption." Gilman v. Gilman, 32 Va. App. 104, 116, 526 S.E.2d 763, 769 (2000) (internal quotation omitted).

The Ameriprise account was created in 2005, during the parties' marriage. Thus, the Ameriprise account is presumed to be marital property, and husband has the burden of rebutting this presumption by showing it to be separate "because it comes within the definition of separate property in Code § 20-107.3(A)(2)(ii) or because it was not 'acquired *during* the marriage.'" Dietz v. Dietz, 17 Va. App. 203, 210, 436 S.E.2d 463, 468 (1993). Thus, husband's argument that wife failed to offer evidence showing that the Ameriprise account was not separate property mischaracterizes the burden of proof.

Husband also relies upon Gilman, 32 Va. App. 104, 526 S.E.2d 763, to support his claim that the trial court erred in classifying the Ameriprise account as marital property. In Gilman, the court held that certain shares of stock purchased during the marriage were the husband's separate property and therefore not subject to equitable distribution. Id. at 116, 526 S.E.2d at 769. However, the husband in Gilman successfully rebutted the presumption that the shares of stock were marital property, despite the fact that they were purchased during the marriage, by

presenting evidence of his income tax records that showed that his income "as of the dates of the purchases was insufficient to enable him to afford the stock purchases," and so the shares must have been purchased with money gained from the sale of other stock which he had purchased before marriage. Id.

In contrast, in this case, husband presented no evidence other than his own testimony that he could not have amassed enough money to open the Ameriprise account within "a year or two years of being married."[9] "'[T]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.'" Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)). The trial court implicitly rejected husband's testimony regarding the source of the funds for the Ameriprise account when it classified the account as marital. Husband provided no other evidence to rebut the presumption that the Ameriprise account was marital property, such as documents of his finances or investments, as in Gilman. Thus, husband failed to rebut the presumption that the Ameriprise account was marital property, and the trial court did not err in classifying it as marital property.

E. Consideration of the Statutory Factors

Finally, husband argues that the trial court erred in dividing the marital estate without properly considering the statutory factors set forth in Code § 20-107.3(E).

Code § 20-107.3(E) provides eleven factors that the trial court must consider before dividing or transferring jointly owned marital property. "The trial court in fixing a monetary award is required to consider all of the factors set forth in Code § 20-107.3(E). The court need

---

[9] We note that husband's testimony in this regard is not even itself entirely on point, as the parties were married in 1998, and the Ameriprise account was not opened until 2005.

not quantify or elaborate exactly what weight was given to each of the factors. The court's findings must, however, be based upon credible evidence." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). A trial court has "broad discretion in the consideration it gives to the statutory factors in fashioning an equitable monetary award," and this Court will "accord deference to this discretion and will not reverse in the absence of its abuse." Marion v. Marion, 11 Va. App. 659, 663-64, 401 S.E.2d 432, 435 (1991).

In this case, the final decree of divorce states, "The Court having considered all of the factors in [Code §] 20-107.3 in particular the length of the marriage, the monetary and non-monetary contributions of each party, the education and employment opportunities of each party; found no fault grounds which would affect the distribution of property and no history of family abuse . . . ." This Court has considered and approved similar language in past cases. See, e.g., Shackelford, 39 Va. App. at 210-11, 571 S.E.2d at 921-22 (upholding the trial court's consideration of the statutory factors when the final decree of divorce stated, "The Court, after considering the evidence presented herein, and the equitable distribution factors set forth in [Code] § 20-107.3 . . . made the following findings.").

> The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented as it related to all of these factors. This does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.

Id. at 211, 571 S.E.2d at 921.

The trial court in this case stated specifically that it considered "all of the factors in [Code §] 20-107.3." Furthermore, it thoroughly detailed which factors it found most important. Although husband argues that the trial court erred in giving greater weight to some factors over

others, this action was within the trial court's discretion and is not subject to reversal absent a showing of abuse. Marion, 11 Va. App. at 663-64, 401 S.E.2d at 435. As a result, we hold that the trial court did not err in its consideration of the statutory factors under Code § 20-107.3(E).

F. Attorney's Fees and Costs

Both parties request an award of the attorney's fees and costs they incurred in connection with this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon consideration of the record, we find "the litigation addressed appropriate and substantial issues and that neither party generated unnecessary delay or expense in pursuit of its interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Accordingly, we deny the parties' requests for an award of appellate attorney's fees and costs.

Conclusion

For these reasons, we affirm in part, reverse in part, remand for additional proceedings consistent with this opinion, and deny the parties' requests for appellate attorney's fees and costs.

Affirmed in part,
reversed in part,
and remanded.

- 17 -