# COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and AtLee
Argued by videoconference

MARY VIRGINIA BRUCE SCOTT

v.      Record No. 0818-19-2

THOMAS ALDOM SCOTT

MEMORANDUM OPINION* BY
JUDGE WESLEY G. RUSSELL, JR.

THOMAS ALDOM SCOTT

OCTOBER 13, 2020

v.      Record No. 0861-19-2

MARY VIRGINIA BRUCE SCOTT

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge[1]

John Stuart Bruce (Eppa Hunton; Eppa Hunton PC, on briefs), for
Mary Virginia Bruce Scott.

Susan A. Kessler for Thomas Aldom Scott.

Mary Virginia Bruce Scott, wife, appeals an order of the trial court directing her to pay

Thomas Aldom Scott, husband, over $49,000 to satisfy one of the equitable distribution terms of the

parties' final decree of divorce. Both parties appeal the trial court's denial of their respective

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Prior to his retirement on July 1, 2019, Judge Hicks presided over this matter and entered both the parties' final decree of divorce on March 8, 2018, and a May 3, 2019 order directing wife to make certain payments to husband to comply with the trial court's interpretation of her obligations under the final decree. As will be noted below, additional proceedings that occurred after July 1, 2019, in the trial court regarding what constituted the record on appeal were heard and resolved by the Honorable Randall G. Johnson, Jr.

requests for attorney's fees in the trial court, and each requests an award for attorney's fees incurred in this Court. For the reasons that follow, we affirm the judgment of the trial court.

BACKGROUND

Although the underlying facts are largely undisputed, we note that, "[w]hen reviewing a trial court's decision on appeal, 'we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences.'" Brandau v. Brandau, 52 Va. App. 632, 635 (2008) (quoting Smith v. Smith, 43 Va. App. 279, 282 (2004)). "That principle requires us to discard the evidence . . . which conflicts, either directly or inferentially, with the evidence" that favored husband at trial. Id. (quoting Petry v. Petry, 41 Va. App. 782, 786 (2003)).

The parties were married in 1983 and separated in 2015. In anticipation of their ultimate divorce, the parties entered into a property settlement agreement, dated September 5, 2017 (PSA). Among its terms, the PSA contained provisions regarding distribution of the parties' retirement accounts, including wife's American Funds IRA account #9941 (wife's account).[2] By reference to an attached Exhibit 1, the PSA allocated $544,280 of wife's account to husband. This allocation was based on an agreed valuation date of August 28, 2018. The PSA further provided that, "[i]n the event either party must hereafter enforce the provisions of this [a]greement or any [court] decree . . . relating to the matters stated herein, that party shall be entitled to recover his or her actual attorney's fees and costs."

When wife's account was valued and the PSA was executed, wife's account contained four separate fund holdings, namely Investment Fund of America, Fundamental Investors Fund, Growth Fund of America, and New Perspective Fund. The PSA does not name these fund holdings, nor does it state the number of shares wife held therein. Wife subsequently transferred all her holdings

_____

[2] The parties modified portions of their PSA by amendment dated January 22, 2018; the amendments have no bearing on the issues currently before this Court.

in both the Investment Fund of America and the Fundamental Investors Fund into a different fund (money market account); she maintained her shares in Growth Fund of America and New Perspective Fund. Wife made the transfer because she was concerned that the funds in wife's account could lose value and she then would be unable to satisfy her financial obligations to husband. As a result of wife's transfer, wife's account thereafter contained three funds holdings, including the newly acquired money market account, which unlike the two holdings it replaced, typically did not yield significant gains or losses.

Prior to entry of the parties' final decree of divorce, the trial court was asked to determine whether husband was "entitled to the gains and losses thereon from the valuation date to the present from the transfer . . . from [wife's account]." The trial court conducted an *ore tenus* hearing on January 29, 2018, and issued a February 15, 2018 letter opinion resolving the issue. The trial court ruled that husband was entitled to any gains and losses from his portion of the marital share. Based on the evidence adduced at the hearing, the trial court reasoned:

> Despite entering into a [PSA] on September 5, 2017, [wife] subsequently moved all of [wife's account], including [husband's] share, based on her "fear of the market." [She] acted unilaterally, taking upon herself the responsibility of [husband's] money; therefore, [husband] should be entitled to any gains made on his portion of his share of these marital funds. [Wife], as the wrongdoer, should not benefit from her inappropriate actions.
>
> . . . .
>
> The evidence . . . showed that [wife] put . . . funds of [wife's account] into a money market account, which the [c]ourt finds was not her decision to make. The [PSA] awarded [husband] half of the marital share of [wife's account], including any gains or losses . . . after the parties signed the [PSA] on September 5, 2017. Accordingly, [husband] is entitled to his share of the gains and losses of [wife's account] as of September 5, 2017 and continuing on until received. [Husband's] share of the gains and losses are not part of [wife's] separate portion of [wife's account], nor is it part of [her] marital share of said account.

The trial court concluded that wife "wrongly moved all the funds from [wife's account and t]his has inappropriately given her the gains and losses on [husband's] money and the use of the same funds up to and including the present date."

The parties were divorced by final decree dated March 8, 2018 (final decree). The final decree affirmed and incorporated the PSA and the trial court's February 15, 2018 letter opinion. The final decree specifically reiterated that husband "is entitled to the gains and losses on his share of [wife's account] as of September 5, 2017, from the valuation date and continuing until received . . . ." The final decree directed wife to "forthwith execute and submit the American Funds IRA Divorce Transfer Request attached hereto as Exhibit A in order to accomplish th[e] transfer to [husband]."

Exhibit A was a fill-in-the-blank transfer request form prepared by American Funds (transfer form); while unendorsed, the form's blanks had been completed. Section 2 of the transfer form asked, "What percentage, dollar amount or number of shares of this account should be transferred?" In the space allocated for a percentage, "49.19" was written; no dollar amount or share number was indicated. Section 2 also established August 28, 2017, as the valuation date and indicated that earnings and losses from that date were to be included in the transfer. Section 3 of the transfer form further instructed that the transfer be made "[p]ro-rata across all holdings in [wife's account]"; section 3 did not reference any specific holdings by name or date.

Although wife objected to the final decree's inclusion of the trial court's rulings as stated in its letter opinion, she did not note an appeal of the final decree and it became a binding final order.

Later in March 2018, wife submitted the transfer form to American Funds. Upon receipt, a representative of American Funds called wife to inquire as to "what was meant by *pro rata*" and how wife wanted the assets removed from wife's account and transferred to husband. The representative tried to explain to wife that the amount of the transfer would be different depending

on how it accounted for gains and losses, whether based on the "current holdings" that included the money market account or constructed from a calculation based on the "valuation date." After much discussion, wife referred to calculations she had performed, using monetary value rather than share numbers. Wife confirmed with the company that the approximate total monetary value of wife's account as of August 28, 2017 was $1,106,331 and that its gains, as based on its current holdings, had been roughly $39,366. Wife then confirmed that 49.19% of each amount was approximately $544,204 and $19,364, respectively. Wife then added those figures together, which totaled approximately $563,569, and she requested that that sum be transferred to husband, removing it *pro rata* from each of her "holdings as they are now." The American Funds representative responded, "That is the way we'll do it, then." The following day, wife affirmed that the transfer was to be "*pro rata* across all holdings" and named the current holdings; the representative agreed to process the transfer accordingly and noted that "it will get today's trade date."

On March 23, 2018, husband received, via transfer by American Funds, a multitude of shares from wife's account; the shares were transferred from holdings in the Growth Fund of America, the New Perspective Fund, and the new money market account. Because wife's account no longer contained shares of the Fundamental Investors or Investment Company of America funds, husband received no shares related to those funds. The value of the shares husband did receive totaled $559,718.65. Concerned that the transfer had not been executed properly, husband contacted American Funds to inquire as to what procedure had been followed in making the transfer; upon inquiry, the company reported to him that it had received verbal instructions from wife to value wife's account as of the date of the transfer.

Six months after the divorce and transfer, husband filed a motion to reinstate the matter on the docket in order to prosecute a motion to show cause. The motion sought relief for wife's alleged "failure to comply with the terms of the Final Decree of Divorce entered on March 8, 2018." In

support of his allegation, husband claimed that wife had failed to comply with the final decree by disregarding the trial court's ruling that he "was entitled to the gains and losses on his share of [wife's account] as of September 5, 2017, from the valuation date and continuing until received . . . ." He specifically asserted that wife violated the final decree by not providing American Funds a copy of the February 15, 2018 letter opinion; "[b]y giving verbal instructions to American Funds . . . to value [wife's account] as a cash account, not shares contrary to [the transfer form] which specified shares and [contrary to] the ruling" set forth in the February 15, 2018 letter opinion; and by further instructing the company "to transfer 49.19% of 'my holdings' valued on the date of transfer and prorated across the current holding, thereby depriving [husband] of any 'gains made on his portion of his share of these marital funds' as" directed by the trial court.

In his affidavit in support of his motion, husband alleged that, per the final decree, he was entitled to gains and losses on the shares of the particular funds that were held in wife's account before wife transferred some of them to the money market account. Based on "calculations generated by American Funds' hypothetical tool," husband claimed that "the correct value of the shares transferred . . . should have been $609,124.00 . . . ."

In response, wife filed a motion to dismiss husband's motion to show cause. She argued that she could not be held in contempt because she had complied with the express terms of the final decree, which did not include any duty to provide American Funds a copy of the trial court's letter opinion. Wife further contended, in essence, that husband was attempting to redraft and modify the final decree, via the transfer form, in violation of Rule 1:1. Nevertheless, in contesting the merits of husband's allegations, wife did not expressly challenge the trial court's authority to consider the issues raised.

The trial court conducted a hearing on husband's motion to show cause on October 29, 2018. The final decree and February 15, 2018 letter opinion were admitted into evidence. Both

parties testified. Wife acknowledged the phone conversations she had had with American Funds, and transcripts of those conversations were presented as evidence. During her testimony, wife explained that she responded to the company's questions by telling them to value the account as of the stipulated valuation date, per the transfer form, but then to take husband's entitlement *pro rata* from wife's account holdings existing as of the transfer date. In support of her position, wife introduced into evidence a draft transfer form that did not become part of the final decree; the rejected draft form, unlike the one ultimately incorporated, specified the four original fund holdings in section 3.

Internal notes that American Funds made in relation to dealings with wife's account indicated that the transfer "request was processed according to the paperwork," but that because wife's account contained more than one fund, wife needed to "provide[ instructions] as to how to remove the [transfer amount] from the acc[oun]t."

Over wife's objection, the trial court qualified husband as an expert financial advisor and allowed him to opine regarding what the value of wife's account would have been had the shares of Fundamental Investors Fund and Investment Company of America been retained in wife's account rather than transferred into the money market account. He explained that, in addition to performing his own calculations, he used a web-based "hypothetical illustration" that American Funds provides to advisors as a tool whereby one "can put in data for a date certain, holding certain, . . . all the variable attributes that go into it . . . and ask it to calculate forward what those share amounts and values on dates specific would be." Husband testified that on April 18, 2018, he performed that calculation for 49.19% of the shares held in wife's account on August 28, 2017, "effective to March 22[,]" 2018, the date of transfer; he described the information he inputted into the tool and relayed that American Funds then performs "the calculation based on their data files, the real data that

actually transpired and all of the distributions that took place for each of these specific accounts and funds over the time period considered."

A printout of the hypothetical illustration was admitted into evidence over wife's objection; it showed that Fundamental Investors Fund "would have been 1,684 shares valued at $103,773" and Investment Company of America would have increased to 3,800 shares valued at $150,942. According to husband, the exhibit thus illustrated that had wife's account maintained its holdings as configured on August 28, 2017, the total value of husband's portion would have grown to $609,124, an amount $49,406 more than the value of the shares he received. Asserting that he was entitled to the difference per the final decree and that the shortage was due to wife's interference, husband asked the trial court to assess the amount against wife as a "fine, just to make him even."

Both parties sought an award of attorney's fees. In support of his request, husband presented an exhibit detailing the services rendered by his counsel and a bill therefor totaling $10,650.40. Wife similarly requested her attorney's fees based on a bill totaling $28,280.

The trial court issued a letter opinion on March 28, 2019. The trial court first summarized its previous rulings as follows:

> Pursuant to the parties' [f]inal [d]ecree of [d]ivorce, [wife] was ordered to "execute and submit the [transfer form] attached hereto." The [transfer form] was intended to transfer 49.19%, pro-rata, of [wife's account] holdings to [husband's] . . . account.
>
> Based on the letter opinion and [final decree], [wife's] account was to be valued as of August 28, 2017, and [husband] was "entitled to gains or losses of his share . . . from the valuation date and continuing until received." [Ellipsis in original.] Thus, [husband] was to receive 49.19% of each fund in [wife's] account as it stood on August 28, 2017, plus any gains or losses that occurred between August 28, 2017 and the actual date of transfer.

The letter opinion recounted, based on the evidence presented at the March 28, 2019 hearing, that on August 28, 2017, the date of valuation, wife's account held shares in four distinct

funds, but that soon thereafter wife transferred all her shares of two of those funds into a new money market account. The trial court further relayed key portions of the communications between wife and American Funds; the trial court emphasized wife's request that the transfer be made "*pro rata across holdings*"—meaning the new money market account and the two other funds she had retained, rather than the four that were extant when the PSA was adopted—and her assent to using "today's trading date."

In rendering its opinion, the trial court expressly noted that it had found wife's testimony "contradictory and evasive" while husband's testimony, in which he explained "American Funds' hypothetical valuation tool," was "more direct and credible."

Ultimately, the trial court agreed with husband and determined that wife "gave verbal instructions to American Funds that were contrary to the [c]ourt's [l]etter [o]pinion and [f]inal [d]ecree of [d]ivorce and frustrated the purpose of the" transfer form. Based on its findings, the trial court further ruled that wife was to pay husband, $49,405.35, "the difference between the amount [husband] actually received . . . and the amount [he] should have received . . . ."

By order entered May 3, 2019 (May 3, 2019 order), the trial court memorialized its March 28, 2019 letter opinion, directing wife to pay husband the additional funds within twenty days. The trial court also denied each party's request for attorney's fees and costs. Both parties objected to the order; in challenging the trial court's order that she pay husband the specified amount, wife raised objections to the trial court's treatment of certain evidence and specific factual findings. Many of the objections related back to the October 29, 2018 proceedings that preceded the unappealed final decree. In addition, wife maintained her arguments that any additional payment was contrary to the PSA and final decree. Wife did not object on jurisdictional grounds. Both parties objected to the trial court's denial of their respective requests for a discretionary award of attorney's fees; each claimed that a fee award was reasonable "under all of the circumstances" of the case.

Both parties noted appeals of this order and began taking steps to perfect their respective appeals. In addition to filing a notice of filing transcript for the October 29, 2018 show cause hearing, wife filed, on June 26, 2019, a "Notice of Filing a Written Statement in Lieu of Transcript" and a proposed written statement of facts for the January 29, 2018 hearing that had been conducted as part of the underlying divorce proceedings. Husband objected to the proposed written statement. Upon review of the statement, the trial court found that it did "not address the May 3, 2019 [o]rder . . . , the matter noted for appeal, but rather the March 8, 2018 [f]inal [d]ecree" and entered an order on July 22, 2019 "[certifying] that the Written Statement in Lieu of Transcript is not an appropriate record regarding the May 3, 2019 [o]rder and is therefore incomplete." The order further "grant[ed] leave for [wife] to set a hearing . . . to correct the [w]ritten [s]tatement so long as the record remains in the [trial court]."

The trial court conducted a hearing on the issue of the written statement of facts on December 16, 2019. On February 7, 2020, the trial court entered an order reiterating that "the Written Statement in Lieu of Transcript filed by [wife] is not an appropriate record regarding the May 3, 2019 [o]rder and her [m]otion to have it included in the record on appeal to the Court of Appeals of Virginia is DENIED." Wife did not file a separate notice of appeal relating to either the July 22, 2019 order or the February 7, 2020 order.[3]

On appeal, wife asserts five assignments of error. Several of the assignments assert errors allegedly made by the trial court in the proceedings leading to and the ultimate entry of the March 8, 2018 final decree. Specifically, she contends that the trial court erred in interpreting the PSA to require her to pay husband a percentage of wife's account, including gains after the valuation date, rather than paying the fixed dollar amount specified in the PSA. She also contends that the trial

_____

[3] These orders were entered by Judge Johnson.

- 10 -

court erred in the proceedings leading up to the final decree by considering parol evidence regarding the meaning of the terms of the PSA.

Turning to actions taken by the trial court after entry of the final decree, she asserts that the May 3, 2019 order was entered in violation of Rule 1:1 because the order was premised on a misinterpretation of both the PSA and final decree, and thus, represented an impermissible redrafting of the final decree as opposed to being an order enforcing the final decree. She also contends the trial court erred in not granting her request for a discretionary award of attorney's fees for the proceedings in the trial court.

In response to wife's appeal, husband requests attorney's fees for having to defend against the appeal. In his own appeal, husband asserts that the trial court erred in not awarding him attorney's fees that he incurred in the proceedings below. He also seeks attorney's fees incurred in pursuing his own appeal.

ANALYSIS

I. Standard of review

On appeal, "we presume the judgment of the trial court to be correct and . . . sustain its finding unless it is plainly wrong or without evidence to support it." West v. West, 53 Va. App. 125, 132 (2008) (quoting M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702 (2002) (*en banc*)). Accordingly, "we will not invalidate a court's decree unless the only reasonable interpretation thereof requires invalidation." Niblett v. Niblett, 65 Va. App. 616, 623 (2015) (quoting Stiles v. Stiles, 48 Va. App. 449, 453 (2006)). Additionally, we recognize that "trial courts have the authority to interpret their own orders[,]" Albert v. Albert, 38 Va. App. 284, 297-98 (2002) (quoting Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc., 260 Va. 137, 144 (2000)), and on appeal, we "give deference to the interpretation adopted by the lower court," id. at 298 (quoting Rusty's Welding Serv. Inc, v. Gibson, 29 Va. App. 119, 129 (1999)). Thus, we review a trial

court's interpretation of its own orders under the deferential abuse of discretion standard. Bajgain v. Bajgain, 64 Va. App. 439, 453 (2015). Similarly, we review a trial court's decision whether to award discretionary attorney's fees under the same abuse of discretion standard. Coe v. Coe, 66 Va. App. 457, 477 (2016). Finally, we note that when parties raise jurisdictional arguments, they pose questions of law subject to *de novo* review in this Court. Brown v. Brown, 69 Va. App. 462, 468 (2018).

## II. Effect of the failure to timely appeal the final decree

As noted above, many of the arguments wife advances in this appeal are premised on her contention that the trial court misinterpreted the PSA in crafting the final decree. Specifically, she contends that the PSA's express terms entitled husband to a fixed dollar amount, $544,280 of wife's account, and that the trial court's conclusion that husband instead was entitled to a percentage, to include any gains and losses after the valuation date, was error. Wife contends that this error is manifest in the final decree and was repeated in the trial court's subsequent rulings in the show cause proceeding which gave rise to this appeal.

Although wife may be correct that the trial court misinterpreted the PSA when it entered the final decree, we cannot consider that argument in this appeal. It is undisputed that wife did not appeal the final decree within the time period established by Rule 5A:6. As a result, the final decree must be treated as if it were "as final as if affirmed by th[e Virginia Supreme] Court on appeal[,]" leaving it "immune from collateral attack, except upon jurisdictional grounds." Shank v. Dep't of Soc. Servs., 217 Va. 506, 508 (1976). Thus, wife's failure to "file [a] notice of appeal within thirty days of the [final decree becoming final] . . . preclude[s her] from challenging anything resolved by that order in this appeal." Carrithers v. Harrah, 60 Va. App. 69, 75 (2012).

That the trial court may have erred in the final decree by awarding husband a percentage of wife's account and an entitlement to any gains to the account between the day of valuation

and the day of transfer is of no moment. As we have held on more than one occasion, "[i]n the absence of fraud, accident or surprise, a judgment, when entered and no appeal taken, is conclusive, even though the judgment is manifestly wrong in law or fact." Commonwealth ex rel. Breakiron v. Farmer, 32 Va. App. 430, 436 (2000) (quoting Slagle v. Slagle, 11 Va. App. 341, 346 (1990)); see also Eagle, Star & British Dominions Ins. Co. v. Heller, 149 Va. 82, 102 (1927) (holding that a final judgment of a court acting within the limits of its jurisdiction cannot be collaterally attacked and that "it is immaterial whether the [judgment] is sound or unsound").[4]

Because the trial court clearly had jurisdiction over the subject matter and the parties when it entered the final decree and no appeal was noted regarding that final judgment in the time period provided for in Rule 5A:6, we must assume for the purposes of this appeal that the final decree is correct in all respects. Accordingly, we cannot consider wife's contention that the final decree was inconsistent with the PSA or any other argument she raises that is premised on the trial court having erred regarding the final decree.

### III. Wife's Rule 1:1 challenge to the May 3, 2019 order

Regarding the trial court's May 3, 2019 order, wife argues that the trial court lacked the jurisdiction to enter it. Specifically, she contends that, because it was inconsistent with the PSA and the final decree, it did not represent enforcement of the final decree, but rather, represented a redrafting of it in violation of Rule 1:1.[5]

---

[4] Wife does not contend that the final decree was entered as a result of fraud, accident, or surprise. Rather, she argues that the trial court failed to properly interpret the PSA as written by the parties. Thus, assuming the trial court erred in entering the final decree, it committed ordinary trial error that would not render the final decree void.

[5] Rule 1:1 provides, in pertinent part, that "[a]ll final judgments, orders, and decrees . . . shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

In making the argument that the May 3, 2019 order is inconsistent with the PSA, wife again argues that the trial court misinterpreted the PSA in that the PSA provided that husband receive a fixed dollar amount from wife's account and never contemplated him receiving a percentage of the account or any gains after the valuation date. Thus, she argues that the May 3, 2019 order is inconsistent with the PSA in the same manner and for the same reason she contends the final decree is erroneous. Because, as noted above, we must assume that the final decree correctly interpreted the PSA, such an argument is not properly before us. Thus, the only portion of wife's Rule 1:1 argument that we can consider on the merits is whether the May 3, 2019 order represents permissible enforcement of the final decree or an impermissible redrafting of it.

Before reaching the merits of that portion of wife's argument, we address husband's contention that not even that portion of the argument is properly before us. Husband contends that wife never raised the Rule 1:1 argument in the trial court, and thus, pursuant to Rule 5A:18, the argument was not preserved for appeal.[6]

Consistent with the requirements of Rule 5A:18, a litigant must contemporaneously object to a ruling of a trial court in order to preserve the issue for appeal and the objection must be made with sufficient specificity to ensure the "trial court [is] alerted to the precise issue to which a party objects." Fox v. Fox, 61 Va. App. 185, 201 (2012). There are, however, exceptions to this general rule. One such exception deals with assertions that an order is void because the trial court lacked jurisdiction to enter it. "[W]e treat orders [entered] in violation of Rule 1:1 as 'void *ab initio*[,]'" Cabral v. Cabral, 62 Va. App. 600, 608 (2013), and therefore, subject to "challenge[] by anybody in

___

[6] Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling[.]"

any forum at any time," id. Because wife raises such a challenge, Rule 5A:18 does not bar our consideration of the merits of her argument.[7]

Although the trial court lost plenary jurisdiction over this matter twenty-one days after the final decree became final, it retained the ability to enter orders to enforce the final decree. Specifically, Code § 20-107.3(K) provides that a trial "court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce" its previously entered orders regarding equitable distribution. As such, "[t]he statute exempts from Rule 1:1 'any additional orders necessary to effectuate and enforce' any previous equitable distribution order entered pursuant to Code § 20-107.3." Cabral, 62 Va. App. at 608. Accordingly, so long as the May 3, 2019 order either effectuates or enforces the trial court's rulings in the final decree, the trial court had jurisdiction to enter it.

To determine whether the May 3, 2019 order merely enforces the final decree or wholly rewrites it in violation of Rule 1:1, we must first determine what was required by the final decree. In doing so, we must defer to the trial court's interpretation and understanding of the meaning of the final decree. Albert, 38 Va. App. at 298. In finding that wife "gave verbal instructions to American Funds that were contrary to the [c]ourt's [l]etter [o]pinion and [f]inal [d]ecree of [d]ivorce and frustrated the purpose of" the equitable distribution award effectuated therein, the trial court clearly understood its May 3, 2019 order as merely enforcing and effectuating the relevant provisions of the final decree.[8] Thus, if there is any plausible reading of the final decree that is consistent with such a

_____

[7] We note that, although wife presented no jurisdictional arguments at the show cause hearing and failed to object to the appealed order on such grounds, she did reference Rule 1:1 in her written motion to dismiss the show cause that she filed with the trial court.

[8] We also note the May 3, 2019 order resolved the proceeding initiated by husband's show cause petition, which sought relief for wife's "failure to comply with the terms of the [f]inal [d]ecree of [d]ivorce entered on March 8, 2018."

- 15 -

view, we must adopt it even if we might have read the final decree differently if called on to interpret it in the first instance.[9] Niblett, 65 Va. App. at 623.

The final decree is not a model of clarity. In addition to the text on the face of the decree, it incorporates, by reference or as exhibits, the PSA, the trial court's February 15, 2018 letter opinion, and the transfer form that is partially filled-out; together, these multiple components create the possibility of different interpretations. In resolving husband's motion to show cause, the trial court determined that the final decree entitled husband to "49.19% of each fund in [wife's] account as it stood on August 28, 2017, plus any gains or losses that occurred between August 28, 2017 and the actual date of transfer." Based on the decree's provisions taken as a whole, whether found in its text or in incorporated documents, we conclude that the final decree plausibly can be read to establish that wife was to provide husband with 49.19% of the contents of wife's account as of the valuation date and that husband was entitled to any gains that accrued or should have accrued to the funds in the account from the valuation date until the transfer was complete. Clearly, that was the trial court's interpretation of the final decree and nothing in the May 3, 2019 order is inconsistent with such a reading. Accordingly, given the deference we owe the trial court's interpretation of its own orders, we conclude that the May 3, 2019 order merely effectuates and enforces the equitable distribution provisions of the final decree, and therefore, the trial court had jurisdiction to enter the May 3, 2019 order. See Code § 20-107.3(K).

---

[9] Our deference to a trial court's interpretation of its own orders stands in contrast to how we review a trial court's interpretation of marital contracts, including property settlement agreements. When called on to review a trial court's interpretation of such agreements, we conduct a *de novo* review and "are not bound by the trial court's conclusions as to the construction of the disputed provisions." Jones v. Gates, 68 Va. App. 100, 105 (2017) (quoting Smith v. Smith, 3 Va. App. 510, 513 (1986)). As noted above, we cannot review the trial court's interpretation of the PSA as reflected in the March 8, 2018 final decree because wife did not timely appeal that ruling. Accordingly, we are bound by the trial court's interpretation of the PSA even if that interpretation "is manifestly wrong in law or fact." Farmer, 32 Va. App. at 436 (quoting Slagle, 11 Va. App. at 346).

IV.  Parol evidence and the trial court's interpretation of the PSA

Wife argues that the trial court, in interpreting the PSA, committed error "by admitting, over objection and with no analysis or finding of ambiguity, parol evidence purporting to explain the meaning of the PSA, which was unambiguous."  We cannot reach the merits of this argument.

The trial court's interpretation of the PSA is set forth in the final decree.  Thus, to the extent that the trial court impermissibly considered parol evidence in interpreting the PSA, it definitionally committed that error prior to entry of the final decree.  Accordingly, to properly place the issue before us, wife was required to timely note an appeal of the final decree, which she did not do.  As noted above, the failure to timely appeal the final decree renders all aspects of that judgment, including the alleged erroneous consideration of parol evidence, "immune" from our review. Shank, 217 Va. at 508.

V.  Trial court's refusal to certify a written statement
of facts for the January 29, 2018 hearing

Wife asserts the trial court erred when it refused to certify a written statement of facts summarizing what occurred at the January 29, 2018 hearing.  Recognizing that the judge who presided over that hearing has retired and that the judge who denied the motion has no way of knowing what transpired at the January 29, 2018 hearing, wife asserts on appeal that she must be given a "new trial with respect to the equitable distribution of" wife's account.

Wife's request for relief makes clear that the significance of the January 29, 2018 hearing is the hearing's effect on the trial court's equitable distribution award as reflected in the final decree. As such, any errors that may have occurred at that hearing were part and parcel of the trial court's judgment when it entered the final decree.  Accordingly, wife was required to raise those errors in a timely appeal of that order.  Her failure to do so renders any errors that might have occurred at that hearing "immune" from our review.  Id.  Thus, even if we were to assume the trial court erred in

- 17 -

refusing to certify the statement, such alleged error has no effect on the case because the issues dealt with at the January 29, 2018 hearing are not subject to our review given wife's failure to timely appeal the final decree.

### VI. Wife's requests for a discretionary award of attorney's fees in the trial court and on appeal

Wife next contends that the trial court erred in refusing her request for a discretionary award of the attorney's fees she expended in defending against the show cause proceeding in the trial court. She also requests that she "be awarded her attorney's fees and costs incurred in this appeal."

"An award of attorney's fees [for fees incurred in the trial court] is a matter submitted to the trial court's sound discretion[,]" Albert, 38 Va. App. at 297, and this Court "will reverse the trial court's decision whether to award attorney's fees to a party only where the record shows a clear abuse of [that] discretion," West, 53 Va. App. at 136. Given that wife did not prevail in the trial court and has not had the positions she asserted in the trial court vindicated on appeal, it is clear that the trial court did not abuse its discretion in denying her requests for attorney's fees incurred in the trial court.

Requests for a discretionary award of attorney's fees incurred on appeal in this Court are governed by Rule 5A:30(b). Rule 5A:30(b)(3) provides that, in considering such requests, we are "not . . . limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but shall consider all the equities of the case." Given that we have rejected the appellate arguments advanced by wife and affirm the judgment of the trial court, the "equities of the case" do not justify awarding wife the attorney's fees she incurred on appeal. Accordingly, we deny that request.

- 18 -

VII.  Husband's request for an award of attorney's fees incurred in the trial court

In his appeal, husband argues that the trial court erred in denying his request for a discretionary award of attorney's fees he incurred in the trial court.  As noted above, such an award falls within the discretion of the trial court, Albert, 38 Va. App. at 297, and we may reverse the trial court's decision "only where the record shows a clear abuse of [that] discretion," West, 53 Va. App. at 136.  Here, although husband prevailed in the trial court, we cannot say that the trial court abused its discretion in denying his request for an award of attorney's fees.  As noted above, the final decree was not a model of clarity, and therefore, the parties pursued the arguments advanced in good faith.  Thus, the trial court did not err in following the "American rule" and denying husband's request for a discretionary award of attorney's fees.  See Mayer v. Corso-Mayer, 62 Va. App. 713, 733 (2014).

Although in the trial court husband only argued that he was entitled to a discretionary award of fees, he argues for the first time on appeal that he was entitled to the attorney's fees as a matter of contract.  Specifically, he notes that Paragraph 17 of the PSA, which states that "[i]n the event either party must hereafter enforce the provisions of this [a]greement or any [court] decree . . . relating to the matters stated herein, that party shall be entitled to recover his or her actual attorney's fees and costs[,]" provides an additional rationale for the trial court to have awarded him the attorney's fees he had incurred.

Although husband may have had a contractual right to recover the attorney's fees he incurred in the trial court, he never requested that the trial court award him fees on that basis.  Accordingly, Rule 5A:18 precludes us from considering husband's contractual entitlement to attorney's fees incurred in the trial court on appeal, and thus, we affirm the trial court's denial of husband's request for a discretionary award of attorney's fees incurred in the trial court.

VIII.  Husband's request for an award of attorney's fees incurred on appeal

Husband has requested an award of the attorney's fees he has incurred in this Court, both as a result of his defending wife's appeal and pursuing his own appeal.  Specifically, he asks that he be awarded "his attorney's fees and costs incurred . . . pursuant to the provisions of the parties' PSA and Rule 5A:30(b)(1)."

The PSA specifically provides that he is entitled to fees incurred "enforc[ing] the provisions of this [a]greement or any [court] decree . . . relating to the matters stated herein[.]"  Having timely raised a contractual claim for attorney's fees incurred in defending against wife's appeal, husband is entitled to such an award.  In defending against wife's appeal, husband is both enforcing the PSA as interpreted by the trial court and seeking to effectuate and enforce the trial court's order regarding the show cause.  Accordingly, by contract, he is entitled to the reasonable attorney's fees and costs he incurred in defending against wife's appeal.

His contractual entitlement to fees, however, is limited to the fees incurred in defending against wife's appeal.  The fees incurred in pursuing his own appeal do not fall within the contractual provision.  He did not raise the contractual argument in the trial court, and therefore, the fees incurred in his appeal fairly cannot be characterized as an attempt to enforce the PSA and, given that he did not prevail on the fees issue in the trial court, cannot be characterized as an attempt to enforce the trial court's show cause order.

Turning to husband's additional request that we enter a discretionary award of attorney's fees for fees incurred in pursuing his appeal, our review is governed by Rule 5A:30(b).  Given that we have rejected the appellate arguments advanced by husband in his appeal and affirm the trial court's refusal to award him attorney's fees incurred in the trial court, the "equities of the case," Rule 5A:30(b)(3), do not justify awarding him the attorney's fees he incurred in pursuing his appeal.  Accordingly, we deny that request.

- 20 -

Determining the amount of the fees and costs husband incurred in defending against wife's appeal and whether those fees and costs were reasonable requires the taking of evidence. Accordingly, we remand this matter to the trial court for the limited purpose of determining the fees and costs incurred by husband in defending against wife's appeal and ordering wife to pay husband those fees and costs to the extent they are reasonable. In crafting the award, the trial court shall not include any fees or costs incurred by husband for events in the trial court prior to the date of this opinion or related to husband's pursuit of his own appeal.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed. We remand the matter to the trial court for the limited purposes described above.

<u>Affirmed and remanded.</u>